## STAFFORD *et al. v.* LICK *et al.*

The forty-first section of the Recording Act, requires conveyances, made before the passage of the act, to be recorded, and the penalty of failing so to do is the same as with conveyances made after the act was passed.

This section of the act is neither in violation of the Constitution of the United States nor of this State, as it does not impair the obligation of contracts, but merely establishes what shall be constructive notice to third parties; nor does it divest vested rights, but only introduces a rule for the subsequent protection of the rights of parties.

The act abolished all *constructive* notice of unrecorded conveyances; but it did not do away with *notice in fact.* Possession, therefore, is not constructive notice of title, but it may be admitted in evidence, along with other facts, to establish fraud or actual notice.

*Per Burnett, J., dissenting.*—The sale of land *in presenti,* with a delivery of possession, there being no adverse claim, is valid under the Mexican law; and the delivery of the title-papers is a symbolical delivery, and for all purposes equally valid with a delivery by formal entry on the land.

The only *penal* section of the Registry Act is the twenty-sixth section, which is, by its own *express limitation,* confined to conveyances *"thereafter* made." Had it been intended to apply its provisions to conveyances *theretofore* made, language equally explicit would have been used; no such application can be adopted by mere inference and implication.

It cannot be said that the statute intended to allow a reasonable time for the recording of past conveyances, for it specifies the time, viz.: before a subsequent purchaser shall record his deed, which might be immediately after the passage of the act.

*It seems,* that it was the intention of the act to procure the recording of past conveyances, by offering rewards, and not by inflicting penalties.

Conceding that it was the intention of the Legislature to render void prior deeds, unless recorded in accordance with the provisions of this act, such a statute would be unconstitutional, as impairing the obligation of contracts, by annexing thereto a condition unknown to the law at the date of the contract, and as divesting vested rights.

Such a statute differs from a statute of limitations, in this, that it imposes new burdens on parties; and it differs from a law imposing taxes not previously existing, in that the latter is expressly authorized by the Constitution.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action of ejectment for the recovery of the possession of fifty-vara lot No. 195, in the city of San Francisco. The plaintiffs rely on a conveyance to them in 1854, from Maximo Z. Fernandez, the original grantee of the lot. The defendants, James Lick and Jean Ducau, claim title, each to one-half of the lot, under conveyance by Fernandez to José Jesus Noé, in 1846, and by conveyance from Noé. All the title-deeds of defendants were duly recorded, except the conveyance of Fernandez to Noé, which was as follows:

"Por el presente doy poder amplio y bastante á Don José de Jesus Noé, para que use ó disponga de mi solar que tengo concedido, como mejor paresca; y para que conste, doy el presente poder, en el punto de Yerba Buena, el dia de Octubre, 1846.

"MAXIMO Z. FERNANDEZ."

Defendants proved that Fernandez had not yet taken his grant from the alcalde's office, at the date of the above, and that Noé, in pursuance of the above, took the grant from the alcalde's office, paying the municipal dues thereon, put improvements on the lot, and, subsequently, sold it in his own name to the plaintiffs. Defendants also proved a verbal sale of the lot by Fernandez to Noé, accompanying the above instrument. Defendants also proved a possession of the lot for over five years preceding the commencement of this suit. Both defendants purchased in 1848 and 1849, and Ducau has had possession ever since of the original petition and grant, as well as of the instrument set forth from Fernandez to Noé.

The Court below charged the jury, that if, at the time Fernandez executed the deed to plaintiffs, the defendants were in the visible and exclusive possession of the premises in controversy, such possession would be sufficient to put the plaintiffs on inquiry, and charge them with notice of defendants' rights. The jury found a verdict for defendants, and judgment was entered accordingly. Plaintiffs appealed.

*Gregory Yale* for Appellants.

The points in this case embrace two principal questions, to which the attention of the Court is directed:

1. Was it necessary that the paper from Fernandez to Noé, dated on the sixth of October, 1846, supposing it to have been a valid deed, should have been recorded, to operate as notice to Stafford, a subsequent purchaser, without notice of that paper, actual or constructive?

2. Is that paper, in terms, a conveyance, or a mere power to convey?

It will be contended that the first question should be answered in the affirmative, and the second in the negative.

The twenty-sixth section of the act concerning conveyances, of the sixteenth of April, 1850, provides as follows:

§ 26. Every conveyance of real estate within this State, hereafter made, which shall not be recorded as prescribed in this act, shall be void as against any subsequent purchaser, in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded.

§ 41 provides: "All conveyances of real estate heretofore made, and acknowledged or proved according to the laws in force at the time of making such acknowledgment or proof, shall have the same force as evidence, and be recorded in the same manner, and with the like effect, as conveyances executed and acknowledged in pursuance of this act."

These two sections, construed as a part of the same statute, and relating to the same subject-matter, intended to establish a

system of legislative or constructive notice, respecting former and subsequent conveyances, place the conveyances which were made before the statute upon precisely the same footing with conveyances executed under the statute, that is, they shall be void as against any subsequent purchaser. The only difference is, that the conveyance made before the passage of the act need not be acknowledged or proved according to the forms prescribed by the act for conveyances under it.

This is not an open question, but one which has been decided by this Court, so as to leave no doubt upon the application of the principle. Call et al. *v.* Hastings, 3 Cal., 179.

In the opinion of the Court, Mr. Justice Heydenfeldt, referring to the statute, says:

"It is unnecessary to decide whether the mortgage under which the plaintiffs claim was valid under the Mexican municipal laws which prevailed at the time it was made. Its validity may be conceded, and if so, it not only was unaffected, but was specifically protected by the act concerning conveyances, passed April 16, 1850.

"That act, however, introduced a new rule for the government of these contracts, not as affecting their validity, but in respect to their relation to the rights of other parties which might afterwards grow up."

The same principle has been announced in other States, as to the registry of deeds existing at the passage of the act, within a certain time, and such deeds have been declared inoperative as to third persons.

In New York, upon the creation of a new county, conveyances recorded in the county of which it was formerly a part, were required to be recorded again in the new county. The Court say: "As this act allowed a reasonable time for the recording of conveyances which had then been given, there cannot be any constitutional objection to its validity, in reference to deeds that were then in existence, and which the grantees in such deeds, or those claiming under them, might have procured to be recorded by the exercise of reasonable diligence, within the prescribed period." Varick *v.* Briggs, 6 Paige, 330.

The same principle is recognized in Iowa, under an act requiring deeds then in existence to be recorded. Hoping *v.* Burnan, 2 Green, 49.

The object of the statute was to establish a uniform system of registry, substituting the record for all other kinds of notice, both as to deeds *in esse* and deeds to be executed; to create a statutory rule as to notice, and abolish all others. It is only upon this principle that an imperfect record, for the want of proper acknowledgment or proof of execution, is held to impart no notice at all. Wolf *v.* Fogarty, 6 Cal., 146; Kelsey *v.* Dunlap, 7 Cal.

It is not pretended that the paper in question should have been acknowledged or proved to have entitled it to record. The statute does not make that pre-requisite as to deeds *in esse*, but simply that they should be recorded as they were. The statute makes the record the only notice, and so this Court has held, making all the decisions under this statute consistent and harmonious.

In commenting upon the effect of the twenty-fifth section, this Court says : " If, however, the act of recording imparts notice, independent of the consequence, as provided in the statute, and its effects are not limited by the terms thereof, it is at best but constructive notice, and therefore insufficient to charge a party with fraud necessary to set aside the act in a Court of Equity, as the rule is well established that it requires actual notice in fact to constitute fraud, or such acts in the premises as some positive statute characterizes as fraudulent." Dennis *v.* Burritt, 6 Cal., 191-2.  Mesick *v.* Sunderland, 6 Cal., 149.

" If it is contended that the possession of the defendants put the plaintiff upon inquiry, and that it was his duty to ascertain the character of the defendants' possession and title, we answer that it was the intention of the statute to protect the purchase of the legal title against latent equities, or mere executory agreements, and to abolish the presumption of notice arising from possession."

Here, there is no pretence of actual notice or fraud. The direction of the Court to the jury, therefore, that the visible possession of the defendants was sufficient to put the plaintiffs upon inquiry, was erroneous, and in conflict with the policy of the State.

*Sydney V. Smith* for Respondents.

This respondent submits that the law of April 16, 1850, concerning conveyances, so far as it requires, for the purpose of imparting notice to subsequent purchasers, that deeds, etc., made prior to the passage of the act, should be recorded, is a retrospective law, one impairing the obligation of a contract, and therefore unconstitutional.

Under the Spanish and Mexican law, there was no office created or in existence for the record of deeds for the conveyance of land. In that respect, their law was identical with the old English law. The possession of the land and the title-papers was the evidence of ownership, and all persons dealing with a party claiming the right to sell, were bound to look to the one and inquire for the other.

Under the Spanish and Mexican law, a party purchasing always bought at his peril; the doctrine of *caveat emptor* invariably applied.

The rule laid down is, that " no one can sell that which does

not belong to him, or which he is not authorized to sell;" and the result to the purchaser is stated as follows: "If the purchaser knew not that the thing sold belonged to another, the vendor is bound to restore the 'price, and to pay damages.'" "If the vendee knew that the thing sold belonged to another, he loses the price paid." Schmidt's Law of Spain and Mexico, pp. 133, 134.

The laws of Spain and Mexico expressly provide for the case of sales made of the same thing to different persons, and decree that he who first takes possession of the thing sold, is the one entitled to retain it, even though he be the one who purchased second in the order of time.

The law is to be found in the third volume of the *Siete Partidas*, page 334, and is designated as Ley 50, tit. 5, part 5.

Escriche, in his dictionary, under the title "*Venta*," subdivision fourteen, states the same to be the rule, and refers to the above quoted law of the Partidas.

But in the case of mortgages of lands, for the security of others, a record office was created, and in order to give notice of such mortgages, they were required to be recorded in the office of the district where the mortgaged property was situated.

The reason for this is obvious. In the case of a sale, the vendor not only divested himself of the actual possession, but also of his title-papers; in the case of a mortgage, he pledging the land only, still remained in the occupation of it, enjoying its use and being avowedly the owner of it. The policy of the law, therefore, required that some notice to third persons of the lien or pledge should be given, and it was provided for in the creation of the mortgage office.

The law on the subject is found in Schmidt's Civil Law of Spain and Mexico, p. 180, etc.

Now, under this law, respondent Ducau, as appears by the statement, purchased the easterly half of the fifty-vara lot in question in the early part of 1849, and has lived on it since then, having since then, the possession of the original petition and grant, the paper given by Fernandez to Noé, and also the subsequent deeds conveying the lot to him, Ducau.

Treating, for the present, that paper as a valid deed of conveyance, it then follows that, down to the sixteenth of April, 1850, Ducau had complied fully with all the requisites of the Spanish and Mexican law, having not only bought his lot, but being in actual possession of it, living on it, and having in his own hands all the title-papers which had ever been made.

As before said, there was, prior to April 16, 1850, no law making it necessary for Ducau to record his title. His possession of the lot and the title-papers was notice to the whole world of his title. Any one, therefore, wishing to buy of Fernandez, bought at his peril. The law of April 16, 1850, was passed after

all that has been above stated had taken place, and provided for a new condition of things; abrogated entirely the old mode of giving notice, and required that it should only be given by means of a recorder's office.

The effect of this provision is to annex a new condition to a theretofore perfect and valid executed contract; perfect and valid, not only as between the parties, but as against the whole world; and is to render that executed contract entirely invalid for the purposes of notice, which it till then possessed, except the evidence of the contract should be recorded.

We have, then, clearly, a law not only retrospective in its character, but one impairing the obligation of a contract.

It was on this very ground that the Court of Errors of New York, in Varick *v.* Briggs, 22 Wendell, 543, overruling 6 Paige, 630, cited by appellants, decided that it was not competent to the Legislature to pass an act declaring a deed which, previous to the passage of the act, was a good and valid conveyance of lands, fraudulent and void, unless recorded previous to the recording of a subsequent deed or conveyance obtained by a *bona fide* purchaser.

Were it not for the decision already given by this Court, in Call *v.* Hastings, the doctrine invoked by the Court, in the latter part of the above-quoted opinion, might be well applied to our statute concerning conveyances, since a strong doubt might exist whether section forty-one was really intended by the Legislature to have the same penalty attached to it as is given by sections twenty-four and twenty-five. In the latter section, it is clear the language used is only intended to apply to conveyances made thereafter, and enacts that unless such be recorded, the penalty·shall attach to them, that is, they shall not operate as notice to third persons.

But in section forty-one there are no words found indicating any intention to attach the same penalty.

It is submitted, however, that the forty-second section of the law referred to, controls the previous sections, and exempts conveyances made prior to the passage of the law, from the operation of sections twenty-four and twenty-five.

As has been stated above, a sale of land, followed by possession in the vendee, and the delivery of the title-papers to him, under the Spanish and Mexican law, carried with it notice to the whole world; and the saving clause of the forty-second section evidently was intended to preserve to deeds, made prior to the passage of the act, such validity, in every respect and for every purpose, as had been given to them under the laws in force at the time they were made.

The doctrine laid down in the case in Wendell, as to the retrospective effect of recording laws, is also enunciated in Robinson *v.* Rowan, 2 Scam. R., 499.

Stafford v. Lick.

The case of Hopping v. Burnham, 2 Green's Iowa R., 39, cited by appellants, does not conflict with the foregoing decisions.

This respondent, however, desires to call the attention of the Court particularly to the facts of the cases of Call v. Hastings, and Mesick v. Sunderland, for the purpose of showing that the facts of those cases are essentially different from the facts of the case at bar.

In Call v. Hastings, the question was between two mortgagees, the first mortgagee holding a mortgage made prior to the act of 1850. It was recorded, it is true, but in a recording office not known to or created under the Spanish or Mexican law; this point is adverted to in the argument of the counsel in that case. The second mortgagee held a mortgage made after the passage of the law of 1850, and recorded in the recorder's office created for the purpose, under the laws of 1850.

Under these circumstances, there could have been no other decision than the one which was made by this Court in that case.

In Mesick v. Sunderland, the deeds under which both plaintiff and defendant claimed title were made after the passage of the law in question, and they therefore depended for their validity upon that law.

As to the second point, whether the paper given by Fernandez to Noé, dated October, 1846, was a power or a conveyance, it is submitted that, under the facts proved on the trial, under the well-known custom which existed here as to the simple form of instruments, the Court below was not in error in holding it a conveyance, though an informal one, it is true, of the lots to Noé.

When it is considered that, at the time of the sale by Fernandez to the appellants, Fernandez had not been in possession for nearly the period of ten years; that he had not in his possession a single paper to show his right to the lot; that the very petition made by Fernandez, and the grant to him, were then in the possession of the respondent Ducau, and had been in his possession from the time of his purchase, in 1849; that Ducau was living on the lot, and had lived on it since 1849; that the appellants only paid five hundred dollars for property worth ten thousand dollars and more; that on the trial, in order to make proof of their title, the appellants were forced to give notice to respondent Ducau, to produce the original petition and grant; it is not saying too much, that any Court would, from such facts alone, be warranted in inferring due notice to appellants, of a prior sale of the property in question, by their grantor, Fernandez, and in enforcing against their demand, whatever equitable rule could be applied for that purpose.

MURRAY, C. J., delivered the opinion of the Court—TERRY, J., concurring.

This was an action of ejectment in the Court below. Trial and judgment for defendants. Several grounds of error are assigned by the appellants, which it is considered unnecessary to mention.

Passing by the question, whether a parol sale of real estate was good under the Mexican law, and treating the written instrument as a conveyance from Fernandez to Noe, we will proceed to inquire what the effect of such a conveyance is as against a subsequent purchaser in good faith. This inquiry involves three questions: 1st, Whether the forty-first section of the Recording Act requires conveyances made before the passage of the act to be recorded? 2d, If the terms of the act extend to such conveyances, is the law unconstitutional? 3d, Was the defendants' possession notice of their title?

The act concerning conveyances, passed April 30th, 1850, provides the mode in which conveyances shall be made, acknowledged, and recorded. That when so made and recorded, they shall impart notice of their contents to all persons; and if not so made and recorded, they shall be void as against subsequent purchasers in good faith. §§ 24, 25, and 26. The forty-first section of the act provides that all conveyances of real estate theretofore made and acknowledged, or proved according to the laws in force at the time of such making, and acknowledgment or proof, shall have the same force as evidence, and be recorded in the same manner, and with like effect, as conveyances executed in pursuance of this act.

It is contended that this section does not require these conveyances to be recorded, but simply permits them to be. That when so recorded, they do not impart notice, but are allowed to be used as evidence, and that there is no penalty for the non-recordation thereof.

In order to arrive at a correct understanding of the intention of the Legislature, it will be necessary to examine the whole act. The design was to establish a system of constructive notice in relation to conveyances affecting real estate. At that time all the lands not claimed by patent from the Mexican government were supposed to belong to the United States. Years would intervene before these lands could be surveyed and brought into the market, and it does seem absurd to suppose that the Legislature intended to require future conveyances ·to be recorded under certain penalties, and leave the originals from which they derive their validity to rest in undertainty and doubt.

The act must be taken as a whole. In the foregoing sections the duty of recording future conveyances is enjoined, and the penalty declared in the forty-first section, which is but a continuation. It is provided that past conveyances shall be recorded in the same manner, and with like effect. It is true, that the section does not say in so many words that, unless so re-

corded, the deed shall be void, but this results by necessary implication from the other section of the statute. Such, at least, was the decision of this Court in the case of Call v. Hastings, 3 Cal.; and whatever might be our opinion, were the question res integra, we are not now disposed to disturb a rule of property that has been so long settled. The public have governed themselves by that opinion, and the question ought not to be again re-opened to meet the exigencies of a few cases arising from the laches of the parties, and not from the harshness or injustice of the rule.

We will proceed next to inquire if the forty-first section of the act is in conflict with the Constitution of the United States, or of the Constitution of the State of California.

It is claimed, first, that the act conflicts with that provision of the Constitution which forbids the States from passing laws impairing the obligations of contracts; and second, that it is obnoxious to our Constitution, because it divests vested rights.

It is difficult to see how it can be claimed that this act impairs the obligation of contracts. A sells his lands to B, before the passage of the act; the deed contains covenants of warranty and seizin. The law does not impair the obligation of the contract, by declaring that A shall not be liable on his covenant to B, neither does it say that the fee shall be divested, or that B shall have less, or A retain anything in the land sold; between them, the statute expressly declares the conveyance shall be good. But as to third parties, it says, if B does not make his title known by recordation, thereby giving constructive notice of his right, and A sells to an innocent purchaser who has no notice of B's title, B shall be deemed guilty of fraud, and his conveyance shall be postponed to that of an innocent purchaser. The contract between the original parties is not interfered with. A has passed all his title in the land, and B is the owner thereof. If B chooses to neglect his duty, as pointed out by the law, and another, in ignorance of his rights, purchases the land, how can B avail himself of his own laches?

It appears to us, that one of the purposes for which government was ordained, was to protect and give security to property, and if salutary laws of this character, ordained for public convenience and to prevent the perpetration of fraud, cannot be passed, that the Legislature is impotent indeed.

In Jackson v. Lamphier, 3 Peters U. S. Rep., p. 289, the Court say: " It is within the undoubted power of State Legislatures to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time, and the power is the same, whether the deed is dated before or after the passage of the recording act. Though the effect of such a law is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law impair-

ing the obligation of contracts; such, too, is the power to pass acts of limitations, and their effect. Reasons of sound policy have led to the general adoption of laws of both descriptions, and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the Legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment. Cases may occur where the provisions of a law on those subjects may be so unreasonable as to amount to a denial of a right, and call for the interposition of the Court, but the present is not one."

In support of the contrary doctrine, the case of Varick's Executors v. Briggs is relied on. In this case, Chancellor Walworth, in 6 Paige, held that the power of the Legislature to pass acts requiring prior conveyances to be recorded was undoubted, but the decision turned on the point that the deed in question, executed in 1802, was not within the act of 1813. On appeal to the Court of Errors, see 22 Wend., the decision of the Chancellor was sustained by a unanimous vote. Senator Verplanck, who delivered the decision of the Court, dissented from the opinion of the Chancellor as to the power of the Legislature to pass acts affecting past conveyances. The statement is sufficient to show that the case cited has no authority, and that the Court did not overrule the opinion of the Chancellor, in fact; that part of the opinion to which Senator Verplanck dissented may be regarded as mere *dictum*, but when we take into consideration the high authority from which it emanated, it is not without weight.

The case of Robinson v. Rowan, 2 Scammon, Illinois Rep., has also been cited. The question there was, whether the statute was designed to act retrospectively, and it was held that it was not. It is true that Chief Justice Wilson, in commenting on the case, intimates that such a law would be unconstitutional, but as this point was not involved, it may be regarded as mere *obiter*.

Let us next inquire if this act divests vested rights.

Again, it may be remarked that it would be difficult to see wherein the act had such an effect. It does not take the property from one man and give it to another; it does not impair his title or take away his right, but simply establishes a rule of evidence. It says to A, if you do not record your deed, and suffer an innocent purchaser to buy your land without the notice hereby established as between yourself and such purchaser, you shall be postponed to his rights. It introduces a new rule, plain and simple, the terms of which may easily be complied with, and he who refuses to bring himself within it, ought not to be allowed to defend in a ·Court of Justice. We can see no difference in principle, between this and limitation laws, or acts abolishing imprisonment for debt, or revenue acts. It might as well be

claimed that if a certain class of property was exempt from taxation under the laws of Mexico, that the Legislature of California could impose no burdens on it.

The power to regulate this subject, has never been disputed. It is the high prerogative of State sovereignty, and when properly and justly exercised, should be maintained. If the act was unreasonable or onerous in its provisions, there might be a question, but where parties have neglected for years the plain mandate of the statute, they cannot complain that it is unjust.

We come now to inquire how far the plaintiffs were affected with notice of the defendants' title, by reason of their possession. In the case of Mesick *v.* Sunderland, we held that it was the intention of the Legislature to do away with all constructive notice, other than that arising from the record, preserving, at the same time, as far as compatible with the rule, actual notice in fact. This intention, we thought, clearly appeared from the statute concerning conveyances, which, on examination, will be found to differ from every statute in the Union on the same subject; and unless this construction be maintained, then one-half of the act must be treated as mere surplusage.

It was the first time the question had come before this Court. Judges in England and the United States had frequently regretted that a more rigid adherence to the rule had not been enforced. It was obvious that sound policy and morality required that the whole doctrine of constructive notice arising from facts and circumstances *in pais*, should be exploded, and nothing but the former decisions of those Courts, tied down as they were by precedent, prevented them from taking a new departure, and establishing a new rule. In this State, while our jurisprudence is in its infancy, it is competent for us to do what the Courts of other States could not; and by conforming strictly to the statute, to afford the public a safe and commodious means by which they may acquire information and protect themselves against fraud. When once the rule is understood, that every man must record his title, no hardship will be found in it, and it will serve as a protection against those who by unrecorded titles seek to perpetrate frauds upon the community.

In the case of Mesick *v.* Sunderland, we expressly held, that the statute did not do away with *notice in fact* but only constructive notice, as to those instruments required to be recorded, so that the doctrine of notice of title arising from possession, no longer obtained. But we nowhere said that possession, together with another fact, might not be admitted in evidence, for the purpose of establishing fraud or notice in ,fact; such, on the other hand, was our understanding of the case, and in the present case, we think it would be proper to admit evidence of possession, as a fact tending to establish notice of title, though not a fact from which notice would follow as a conclusion of law.

On the argument of this case, the counsel for the respondent reviewed the decision of Mesick *v.* Sunderland, and seemed to think that it was intended to apply to all conveyances of any estate in lands, legal or equitable, and that, unless recorded, they were void as against subsequent purchasers in good faith without notice. Such certainty appears to be the language of that decision, and it is due to the Court, as well as to the counsel who argued the case, to state that the fact of notice arising from possession was not a distinct ground relied on in the case, the object of both parties being to get the opinion of the Court as to the character of the instrument and the estate conveyed.

In Cook *v.* McChristian, which was a suit involving a right of homestead, it was contended that the intention of the parties to dedicate the premises for homestead purposes should have been made in writing, and recorded in the county recorder's office; but we held, the law did not require that such estates should be recorded, to operate as notice, and that in the absence of any statute on the subject, the common law rule obtained, and possession would put the purchaser upon notice of the occupant's title. Such, I suppose, must be the rule in every case where the law does not require a particular species of conveyance to be recorded; but wherever the statute has said that certain instruments shall be recorded, to operate as constructive notice, it is absolutely necessary that the law should be complied with; otherwise they will be void as against subsequent purchasers in good faith without notice;—the doctrine of constructive notice arising from possession having been superseded or abrogated by notice established by the statute.

So far as the opinion of the Court in Mesick *v.* Sunderland militates against this position, it is erroneous, and cannot be sustained on principle or authority.

Judgment reversed, and cause remanded.

BURNETT, J.—I am compelled in this case to dissent from the opinion of my associates. That opinion sustains principles that I cannot sanction. Those principles, in my view, are fundamental, and are too important to be conclusively settled by the former opinion of this Court. It will be necessary, in order that I may be clearly understood, to go into some detail.

I agree with my associates in considering the writing given in the record as intended for a conveyance.

In the case of Hoen *v.* Simmons, (1 Cal. R., 121,) there was some doubt expressed as to whether a parol sale of real estate *in presenti*, accompanied with delivery of possession, was sufficient under Mexican law. But it seems that in the subsequent case of Tohler *v.* Folsom, (1 Cal. R., 210,) the validity of such a sale is substantially admitted, and in the plaintiffs' brief in the present case, the same admission is substantially made; but the

counsel insists that " no parol conveyance was good, unless accompanied with livery of seizin." In the latter case, this Court reviews the decision in the case of Hoen v. Simmons, and plainly distinguishes between the circumstances of the two cases. In Tohler v. Folsom, this Court held that a delivery of the title-papers was a symbolical delivery of possession. The Court said : " In the present case, Leidesdorff, at the time of the verbal sale, delivered to the plaintiff the title-deeds of the lot, and the latter afterwards took actual possession of the land, and has made improvements thereon at a cost of several thousand dollars."

It would seem, then, to be a correct conclusion, that a parol sale of land *in presenti*, with a delivery of possession, there being no adverse claim, would, at the time, be valid under Mexican law, and that a delivery of the title-papers, or other paper-equivalent, is a symbolical delivery, and for all purposes equally valid with a delivery made by a formal entry upon the land itself, by both the parties at the time of the sale. And especially would this be true in reference to the present case. Here, the possession of the premises was taken under the conveyance, and also of the title-papers, and we hear of no objection. ever being made by Fernandez until many years afterwards. Under these circumstances, conceding that the law existing at the time the sale was made, had continued unchanged up to the date of the deed in 1854, to the plaintiffs, could either Fernandez, or any one claiming under him, have recovered the possession of the property from the defendants? It is apprehended they could not. The substantial purposes of the law had been accomplished, and the title had vested in Noé and his grantees.

But a new government has succeeded, with a new system of registry, and the question then arises, what effect do the provisions of our act have upon the rights of these parties. The conveyance from Fernandez to Noé was not recorded prior to the conveyance from Fernandez to the plaintiffs ; and conceding that they were subsequent purchasers in good faith, and for a valuable consideration, was the conveyance from Fernandez to Noé void as to them? And this question divides itself into two branches. First—does a fair construction of the forty-first section of the Registry Act make this conveyance void as against subsequent purchasers? Second—if so, is that section a violation of the Constitution of the United States, or of this State ? That section is as follows : "All conveyances of real estate heretofore made, and acknowledged or proved, according to the laws in force at the time of such making and acknowledgment of proof, shall have the same force as evidence, and be recorded in the same manner, and with the like effect, as conveyances executed and acknowledged in pursuance of this act."

It will be perceived, that this section simply declares that those conveyances shall be " recorded in the same manner, and

with the like effect," as deeds made in pursuance of the act; but it nowhere declares that any penalty shall be incurred by the failure to record them. It is one thing to give a certain effect to a certain act when done, and a very different thing to inflict a penalty for not doing it. In one case the law seeks to accomplish the end intended, by bestowing *rewards*, and in the other, by inflicting *penalties*. And there may be the best reasons for giving the reward, and the best reasons for not inflicting the penalty.

It is only by *mere inference* that a penalty can be inflicted in such a case, and this without any express provision of the statute. The law abhors forfeitures, and the language of a statute inflicting them should be strictly construed. When, and in what case, did a Court of Justice ever inflict a statutory punishment upon a prisoner, without express affirmative words declaring that the specific punishment should be inflicted? And I am not aware of any case, where a man was ever decided to have forfeited his property by mere inference. Penalties and forfeitures can only be incurred by a violation of an express provision. When the law-maker intends to inflict either, in common justice he ought to speak plainly, and his meaning should not be left to implication.

In New York, an act was passed in 1805, requiring *all deeds*, executed since the first of October, 1802, to be recorded on or before the first of January, 1806; but the usual penalty, that if not recorded, they should be held void as against subsequent purchasers, was omitted, and the Court of Errors held that it could not apply to deeds not required to be recorded, when made. "The provision," the Court said, "for recording such prior deed, thus stands alone directory as to the manner, the time, and the place of recording the deeds of those who, without absolute legal necessity, might think fit thus to protect the evidence and muniments of their title." 22 Wend., 548.

The twenty-sixth section of our Registry Act is in these words :

"Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this act, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate, or any portion thereof, when his own conveyance shall be first duly recorded."

This is the only *penal* section in the act; and this, by its own *express limitation,* is confined to conveyances "*thereafter made ;*" and they are only void as against any subsequent purchaser "when his own conveyance shall be *first* duly recorded."

Now, had it been the intention of the Legislature to extend the penal provisions of the twenty-sixth section to conveyances *theretofore* made, then language equally clear and explicit would

have been used. As an express application of this section was confined alone to *future deeds*, surely the *same*, if not greater, caution and certainty, should have been used as to *past* conveyances, had such been the intention. Where the law-maker, by *express limitation*, confines the consequences of a *penal* provision to a *specified* class of cases, he directly expresses his clear intention to exclude *other* cases not mentioned; and before he can be supposed to have changed his intention, as already so clearly and explicitly stated, the language used by him to express such a change should be clear and free from all doubt. In this act, the intention of the law-maker to confine the penal provisions of the twenty-sixth section to *future* deeds, is clearly stated; and to show that he afterwards changed his intention, words the most explicit were required. The express language of the twenty-sixth section was left without any change, and as solely applicable to *future* deeds; and to overcome this clearly expressed intention, nothing short of the most explicit language would answer. But those who apply the penal provisions of the twenty-sixth section to *past* transactions, are compelled to reach that conclusion by mere inference and implication, and this not only in violation of the plain and equitable rule of construction that penalties and forfeitures will not be inflicted except when expressly imposed, but they reach this inferential conclusion in direct and positive conflict with the most clear and explicit words of the statute. For, as the section is expressly confined to future deeds, to make it apply to past conveyances they are compelled to contradict the plain language of the statute, and to infer that the law-maker intended to break down the limitation which he had already so clearly stated. Now, had it been the intention of the Legislature to make the twenty-sixth section embrace the past, as well as future conveyances, the language of that section would have been *changed.* That the Legislature should have been so careful to confine the penal provisions of the twenty-sixth section to future deeds, and this by express and exclusive words, and yet have intended to contradict that section, and at the same time have left that intention to mere inference, is, I apprehend, a very rare anomaly in legislation.

But I will take this "new rule, plain and simple," to be true, for the sake of the argument simply, and then endeavor to show its practical effects.

It would seem to be clear, that if the penal provisions of the twenty-sixth section apply to past deeds at all, they apply to them to the *same* extent, and in the *same* manner, as they do to future deeds. It is insisted that, by the forty-first section, these past conveyances must be recorded with "the *like effect*," and therefore, under the *like penalties,* as deeds executed in pursuance of the act. Then it would clearly follow, that he who *first* re-

corded his deed would hold the land. Suppose A and B to have had separate conveyances made before the passage of the act, by the same person, at different times, in due form, and for the same land; then, upon the passage of this act, the subsequent grantee could defeat the prior right by recording his deed *first;* and this he could readily do, if he *happened* to be first informed of the passage of the act. The act does not fix a definite and reasonable time in the future within which these past conveyances should be recorded, but places the prior *valid* deed at once upon the same footing with the subsequent *invalid* deed, and leaves the question, as between them, to be settled by the *priority of the record.*

It cannot be said that the statute intended to allow a reasonable time within which these past conveyances must be recorded. When the law requires a certain act to be done, and specifies no time within which it must be performed, then a clear intention is shown to adopt the general rule of reasonable time. It may often happen that from the very nature of the case no definite time could in justice be specified; and for that reason the law leaves each case to depend upon its own peculiar circumstances. But when the law-making power exercises its own discretion and specifies a certain time, the rule of reasonable time is clearly excluded, and the Courts must take the provision as they find it. This is especially true in reference to cases where the rights of contesting individuals are involved, and where these rights depend upon the priority of certain acts performed. If the time as specified in the act, be subject to a constitutional objection, then the whole provision must fall, for the reason that the Courts cannot set aside that time and adopt another without assuming the exercise of legislative power. The Legislature was not bound to pass the provision; it was matter of legislative discretion—and had it been foreseen that a change of time would be made by the Courts, it is to be presumed that the provision would not have been adopted in any form. At least it cannot be assumed, that with this change, the provision would have been made. The Registry Act took effect from and after its passage, and this was the time specified by the law then existing. If it affected the rights acquired under prior deeds, then it affected them in the same way as it did the rights acquired under subsequent deeds; for the act makes no distinction between the two cases, if it be conceded that the provisions of the twenty-sixth section apply equally to both. Then he who *first* recorded his deed, made prior to the passage of the act, would hold the land to the exclusion of all others. And this he could do at once, upon the passage of the act, if he happened to know it. And this left the rights of the holder of the valid conveyance dependent upon accident, and placed him upon the same footing with the party who held the subsequent invalid deed.

Most of the conveyances made before the passage of the act were written in the Spanish language, and held by those who had never been accustomed to a recording system, and who could not understand English.    The act was at first only published in English, and the Spanish translation was not published for many months after the passage of the act.    This state of things was foreseen and understood by the Legislature of 1850, and for that and other reasons, it could not have been intended to apply the penal provisions of the twenty-sixth section to those past transactions.

That it was the intention of the act to procure the recording of these past conveyances, by offering rewards, and not by inflicting penalties, would seem clear, not only from its own explicit terms, but also from the considerations already stated, and from others that will be suggested.    The Mexican law required no registry of deeds, but the purchaser must take and hold possession of the property, and this possession was notice to third persons.    That system did not encourage speculations in real estate, and, therefore, required continued possession by the purchaser. As no record of the deed was required, the purchaser had no means of procuring authoritative copies of his title-papers, in case of loss.    The forty-first section of our Registry Act intended, therefore, to confer upon him the privilege of recording his title-papers, so that he could use certified copies of them, in evidence, in case of loss, and need not remain in the continued actual possession of his property.    In other words, this section applied to those past conveyances the substance of the twenty-fourth, twenty-fifth, twenty-ninth, and thirtieth sections of the act, and not the provisions of the twenty-sixth section.    These new privileges would seem to have been sufficient to induce a compliance with the provisions of the forty-first section, and to have accomplished, substantially, all the good intended, without a resort to the harsh penalties of the twenty-sixth section.

It seems to me that Courts should be should be slow in coming to the conclusion, that the most glaring and manifest injustice was intended by the Legislature.    Suppose the Legislature should hereafter pass an act, to take effect at once, and it should be contended, though not expressly so stated, that the act required all deeds made prior to its passage, to be recorded over again, under the penal consequences of the twenty-sixth section; would not a Court hesitate long before coming to the conclusion, from mere implication, that such injustice was intended?    To say that deeds, good without recording when made, and deeds once properly recorded, shall be recorded in the first case, and re-recorded in the second, and allowing no reasonable and definite time, in the future, within which these acts should be performed, but giving the *first recorded* deed the preference, would

be so manifestly unjust, that no Court, it is apprehended, should sustain it upon mere inference, if at all.

In the case of Varick v. Briggs, 6 Paige, 330, and 22 Wend., 543, it appeared that John Tibbitts made two deeds, one in July, 1801, and the other in August or September, 1802, and at the time of making such deeds there was no law requiring them to be recorded, as the Registry Act did not extend to the county in which the lands were situated. An act was afterwards passed by the Legislature of New York, in 1813, requiring *all deeds*, without exception, executed after February 1, 1799, to be recorded, under the penalty of being adjudged void, as against subsequent purchasers. Chancellor Walworth, and after him the Court of Errors, held that it was not the intention of the statute, broad and general as were its terms, to include deeds that were not required to be recorded at the time when made; and that the failure to record those deeds, under the retrospective act, did not render them void as to subsequent purchasers. And the Chancellor said, that "in construing statutes, it is not reasonable to presume that the Legislature intended to violate a settled principle of national justice, or destroy a vested title to property. Courts, therefore, in construing statutes, will always endeavor to give such an interpretation to the language used as to make it conformable to reason and justice." And in the opinion of the Court of Errors, Senator Verplanck said : " I have nothing to add to the Chancellor's reasoning as to the probable intention of the Legislature, that the act of 1813 was not to be retrospective as to all prior deeds, but was intended to apply only to conveyances of lands in counties which had already been subject to similar laws, under previous acts for recording. I assent fully to this construction."

But conceding, for the sake of the argument, that it was the intention of the forty-first section of our Registry Act, to render void prior deeds unless recorded in accordance with its provisions, would such a statute be constitutional?

In the case of Bronson v. Kinzel et al., (1 Howard U. S. R., 319,) the opinion of the Supreme Court of the United States, delivered by Chief Justice Taney, (an opinion distinguished alike for its clearness, simplicity, and force,) settles this point: that the law existing at the time the contract is made, enters into and forms a part of the contract itself, without any stipulation to that effect in the deed ; " and any subsequent law, impairing the rights thus acquired, impairs the obligations which the contract imposed." The doctrine of this case is expressly affirmed in the subsequent cases of McCracken v. Hayward, (2 Howard, 608,) and McFarland v. Gwin, (3 Howard, 717,) and has become the settled doctrine of that high tribunal.

According to this principle, and the view we have taken of this case, the title to the premises in dispute fully vested in Noé

and his grantees before our Registry Act was passed; and this being conceded, could that act impair these vested rights by annexing to the contract the performance of *another condition,* unknown to the laws existing at the time, and not within the contemplation of the parties, and forming no part of their executed contract? And if the statute could impair these vested rights because the party failed to record his prior valid conveyance, could it not equally impair them upon failure to perform *any other* act that might have been required? Is not the only difference in the *degree,* and not in the principle?

The plaintiffs' counsel has referred to the case in 6 Paige, 330, in support of his proposition, that such an act would not be void, and the opinion of Chancellor Walworth certainly does support his view. But at the same time, the counsel, it would seem, has overlooked the fact that the opinion of the Court of Errors in this same case, overruled the opinion of the Chancellor in *this* respect, and held that such an act would be clearly unconstitutional and void. And this opinion of the Court of last resort was unanimous, all the members of the Court agreeing. In the able and lucid opinion delivered by Senator Verplanck, the only opinion delivered, will be found these words:

" Deeds, valid and perfect at the time of their execution, and not then requiring for their full legal effect any further legal sanction, such as recording, are complete and valid executed contracts. Now the effect of a subsequent statute, enacting that such valid contracts shall be adjudged fraudulent and void as against certain persons, unless a further legal sanction be added, must be in direct hostility to the very words of the constitutional inhibition. The contracts themselves are impaired by being adjudged void. The obligation of the contract between A and B was before binding upon B, and all who might claim the effect of the contract by his grant or under his title. A law is passed pronouncing that, in certain cases, the contract shall be binding only upon B, and that its former obligations shall no longer bind B's grantees. Does not such a law impair that contract? Now it cannot be presumed that the Legislature intended to enact such an unconstitutional requirement."

The case of Robinson *v.* Rowan, 2 Scammon's Rep., 499, is a case to the same effect. In that case, Bays sold Rowan a tract of land, by deed, dated December 11, 1832, which was recorded December 11, 1833. At the time the deed was executed, the failure to record within six months made the deed void as to subsequent *purchasers,* but not as to *creditors.* But the act of 1833 made such a deed also void as to creditors. In September, 1833, Hill obtained judgment against Bays, and under the law of Illinois, this judgment was a lien upon the property of the judgment-debtor. The land was afterwards sold by the sheriff under the judgment, and the plaintiff, Robinson, became the pur-

chaser. The Court held that the title was in Rowan; that the parties made their contract with reference to the law then in existence, and that " law should furnish the rule by which their rights should be tested, and that it is not by construction that the Court will be warranted in the imposition of additional liabilities." And Chief Justice Wilson, in delivering the opinion of the Court, says: " It is a remedial statute, but to give it the construction contended for, by which liabilities and duties are imposed upon purchasers, which were neither known to the law nor contemplated by them when they contracted, would convert it into a penal one. It is only in the degree of injustice and hardship that such a law differs from an *ex post facto* law, an evil of sufficient magnitude to be forbidden by the Constitution."

The plaintiff's counsel has also referred to the case of Hopping *v.* Burnam, 2 Green's Iowa Rep., 39; and Call et al. *v.* Hastings, 3 Cal. Rep., 179. It will be necessary to examine these cases separately.

In the Iowa case, the unrecorded deed was executed while a statute of Michigan was in force, which required the deed to be recorded, and a registry act was afterwards passed in 1840, by the Legislature of Iowa, displacing the former law, but still requiring deeds to be recorded. As Hopping failed to record under *both* acts, his deed was adjudged void as against a subsequent purchaser. And in delivering the opinion of the Court, Green, Justice, says: " Hopping's common law rights under the deed are adverted to, but as the deed has never been without statutory control, never for a moment released from the requirements of a recording act, it is useless for us to consider what rights he might have acquired under a law which had no bearing upon the case." It is true, the language of the Judge would bear the construction given it by the learned counsel for plaintiff, if we leave out of consideration the facts to which he had reference; but taking the opinion as a whole, we do not understand him to have advanced the opinion assumed.

In the case of Call *v.* Hastings, the question arose between persons claiming under two different mortgages, the first made in February, 1850, and recorded in the Schoolcraft records, and the second executed in May, 1850, and properly recorded. Under the Mexican law, mortgages were required to be recorded, but deeds were not. Schmidt's Civil Law of Spain and Mexico, 181. And the point was made by counsel, that the first mortgage had not been recorded, as the Mexican law required. But it must be conceded that Justice Heydenfeldt, who delivered the opinion of the Court, (Justice Wells concurring,) expressly placed his decision upon the provisions of the forty-first section of our Registry Act. The facts of this case are not at all against the construction we have given the Registry Act. Still, the decision is in point for the plaintiffs in this case, so far as regards

Stafford *v.* Lick.

the reasons given by the Court to sustain its judgment. But it is to be remarked that the constitutional objection was not raised in that case; was not before the Court, and was not at all noticed in the opinion. The case was wholly discussed and decided upon other and different grounds. So far, then, as the constitutional question is concerned, this decision is no authority one way or the other; and the present, it is thought, is the first case that has ever brought up that question fairly before this Court.

The cases that have arisen under acts requiring prior deeds to be recorded, were cases where there was a recording statute in force at the time the deed was executed, and which formed a part of the contract itself. In these cases, the Courts have sustained the statutes, and upon grounds the most rational and satisfactory. Under recording systems, the purchaser is required to record his deed, either when made, or within a given time; and if he fails to record his deed, it is only void as against *subsequent* purchasers. But he is always allowed to record, at *any time before* the rights of others have attached. When, therefore, a new Registry Act is passed, it would be unjust to prior purchasers not to allow them to record with the same effect as if the prior law had continued in force. And it is upon this ground that such provisions in the subsequent acts are predicated. It is the mere substitution of one system for another, saving the privileges of former purchasers. If, then, the purchaser has failed to record under the law existing when his deed was made, and still fails to record under a subsequent act, which also allows him to do what the law of his contract required, he has no right to complain if his deed is held void when the rights of others have attached. His title was never perfect at any time. But far different is the case of the party who did *all* that was required of him, to make his title conclusive against all the world. His contract is completed, and the title fully vested in him. No further act being required by the law of his contract, how can the Legislature say to him, "You shall do more than the law required you to do, or you shall forfeit your estate." It is perfectly competent for the Legislature to pass registry acts to regulate *future* conveyances, with penalties to enforce their observance, because these acts become a part of the future contract, and by the very terms of that contract, the purchaser is bound to record his deed.

It is insisted, that there is "no difference in principle between this and limitation laws, or acts abolishing imprisonment for debt, or revenue acts."

I readily concede, that there is no difference in principle between this case and the *reasons* usually given for sustaining acts abolishing imprisonment for prior debts. But, I confess, the reasons given do not seem satisfactory. Conceding, that under the law existing when the contract was made, the creditor, by virtue of the contract, had his remedy against both the person

and property of the debtor, I cannot understand how the Legislature could destroy the remedy as to either the one or the other, without impairing the obligation of the contract in the same way as if the remedy had been taken away entirely. It is only a difference in degree, and not in principle. In such a case, I think a creditor of practical good sense might well say to the Legislature, "I supposed the Constitution was intended to secure great practical results; and I supposed it meant, by the *obligation* of a contract, that vital binding element, that would secure its practical performance. But, if I am mistaken in this, then the Constitution has restricted your power only as to the shadow, and left it untouched as to the substance. Had you taken from me all remedy against both the person and property of my debtor, and still have given me a judgment against him, you would then have left what you call the obligation of the contract still existing. But, as it is, you have practically taken away one of my securities, and I have thereby lost my debt. And you may call it by what name you please, the result and the injustice to me are the same, and this by no act or fault of mine, but is the legitimate consequence of your act alone."

But, with all due deference to so many high authorities, I am compelled to place those decisions upon other grounds. I hold that a man under our constitutional system, can only forfeit his liberty by the commission of crimes against his country. The moment a State Constitution went into effect, that moment imprisonment for debt became illegal, unless there was some special provision allowing it. It is inconsistent with constitutional freedom, against public policy and public right, and no contract of the kind could be rightfully enforced in a Court of Justice. The State and the United States have an interest in the freedom of every citizen; and a man can no more make a valid contract for his incarceration in a prison, any more than he can to cut off his right arm, or mutilate his person in any way. He cannot, by contract, oblige himself to deprive his country of his services.

And as to the right of the Legislature to impose a tax upon property, exempt from taxation under the Mexican law, conceding there was such exemption, there can be no question. But this right exists by an express provision of the Constitution, which says, "all property in this State shall be taxed in proportion to its value." Taxation must be uniform throughout the State. I readily concede, that had the Constitution conferred the power upon the Legislature to impair the obligation of past contracts, then there could have been no question as to the constitutionality of the Registry Act, even giving it the construction contended for. And the power of the State to impair the obligation of her own contracts, may be different from the power of the Legislature to pass an act impairing the obligation of contracts existing between individuals.

But is it true that this construction of the act does impair the obligation of the contract? I think it does. Suppose A, under the former law, to have made a deed, *first* to B, and afterwards to C, of the same land, what would have been the relative position of the parties, under the then existing law? B would keep the land, and C would have had his remedy against A, for the fraud. But suppose, after the passage of the act, C had recorded his deed first, what then would have been the relative condition of the parties? C could not go back upon A, and B would lose the land, without any recourse upon A, who would be relieved of all responsibility, and get paid for his land twice. Contrary to the legal obligation of the contract, *as made,* the subsequent law annexes a new condition to it, and makes the title flow back from B, through A, to C—thus entirely changing the relative position of the parties. And supposing that A did not make the second deed to C until *after* the passage of the act, the effect of the statute is to *re-vest* the title in A for the *purposes of sale,* and all the consequent benefit, resulting from double compensation to A, while he would be relieved of all responsibility to either party. Now, by the obligation of the original contract, no such result could follow, and hence, the obligation of the contract has been changed, and consequently impaired. And when it is said that this is the effect of the fraud, in the first purchaser failing to record his deed, it is only throwing the blame upon the injured party. He took his conveyance free from such a requisition, and what right then has the Legislature to call that a fraud which the contract, admitted to be valid, calls no fraud?

It is also contended that the right of the Legislature to pass statutes of limitation in reference to prior contracts must rest upon the same principle. There is, however, some difference in the two cases. Statutes of limitation impose no new burdens upon parties. These statutes only say that if you intend to sue at all, you must bring your suit within a limited time, for it is as easy to sue at one time as at another, and in the *form* of a *judgment* the obligation of your contract continues beyond the limitation set for bringing the action. But conceding that the principle is the same, should it be extended to other cases? This Court has decided that the restrictive provision of the Constitution, that every law shall embrace but one object, was only directory, yet this Court has, by subsequent decisions, shown a manifest disinclination to extend this principle of construction to other cases.

In the case from 3 Peters, 289, Justice Baldwin, in delivering the opinion of the Court, expressed no doubt of the power of the Legislature of a State to pass acts affecting past conveyances. This is certainly a very high authority, although the question was not raised in that case, so far as I understand it. I think, in the case of Varick *v.* Briggs, it must be conceded that if the

opinion of Senator Verplanck that such a law would be unconstitutional, was mere *dictum*, then the contrary opinion of Chancellor Walworth, in the same case, upon the same point, must be considered equally a mere *dictum*.

So far as my researches have gone, and so far as the citation of authorities by the counsel in this case goes, there is no adjudged case, where the Supreme Court of a single State has ever decided that a party, holding a deed not subject to a registry system when made, ever forfeited his land by the failure to record his deed under the provisions of a retrospective act. As we have already seen, the point has come up under the general words of statutes, embracing *all past deeds*, yet the injustice was considered so great, that the Courts would not presume that the Legislature, in the language of Chancellor Walworth, "intended to violate a settled principle of natural justice, or destroy a vested title to property."

But upon one point they all seem to be agreed, that such an act may be unconstitutional. This is shown from the language of Justice Baldwin, as quoted in the opinion of my associates. And Chancellor Walworth held, that a retrospective act, requiring a last deed to be recorded, would be unconstitutional. In all the acts requiring prior deeds to be recorded, there was a definite and reasonable time given. None of them embodied the harsh provisions that our statute is construed to contain. Now, had any of these learned judges been called upon to sustain such provisions as our Registry Act must contain, if the penal provisions of the twenty-sixth section apply at all to prior deeds, it is conceived they never would have sanctioned them, much less would they have given the act such a harsh construction by mere implication.

It is very true, as my associates assume, that the decision of this Court, in the case of Call *v.* Hastings, has been since considered the law of such cases. To overrule that decision, would affect titles acquired under it; but it is equally true, as I conceive, that it would also restore rights divested by that decision, and vindicate the justice of the Legislature, and the integrity of the Constitution. A former decision of this Court should not be overruled, except in a clear case; but when great injustice has been done by such a decision, and a violation of the Constitution sustained, it should be overruled. Our State is yet very young, and now is the proper time to lay deep the foundations for our future judicial edifice.

And I confess I cannot see how the unity and design of our registry system can be seriously affected by the construction of the Registry Act which I have given it. The parties claiming under these prior conveyances, were bound to keep possession of the property; and by the decisions of the English Courts, and of nearly all the Courts of the several States, this possession was

sufficient notice, even as to deeds executed under our existing registry system. And when we reflect that the Legislature of 1850 passed a Statute of Limitations, requiring ejectment suits to be brought within the short period of five years, it will be readily seen that time would soon remedy any supposed inconvenience that might result from not recording these deeds.

But, conceding all that has been assumed, I think the judgment of the Court below should be affirmed, upon the ground that a parol sale of land, accompanied by possession, which has been subsequently continued, is good under the law then existing. And admitting the defendants' claim under the written conveyance, that circumstance, in my view, does not place the plaintiffs in any better condition.