[Civ. No. 2309.   Fourth Appellate District.—August 30, 1939.]

SECURITY FIRST NATIONAL BANK OF LOS ANGELES (a Corporation), Respondent, v. SEVERO SARTORI, Appellant.

Liggett & Liggett for Appellant.

Whitelaw & Whitelaw for Respondent.

HAINES, J., *pro tem.*—It appears that in the year 1921 defendant and appellant Severo Sartori obtained judgment on a promissory note in the principal sum of $350 executed to him by the defendant Bob Beretta. Subsequently he brought action upon this judgment and on April 12, 1926, obtained another judgment in renewal of it aggregating $566.45. Notwithstanding effort to realize on this judgment by execution and various supplementary proceedings the same remained unsatisfied and after five years had elapsed such proceedings were taken under section 685 of the Code of Civil Procedure that Sartori obtained an order permitting execu-

tion to issue, pursuant to which execution did issue upon said last-mentioned judgment for $1,048.67 on November 27, 1937, and was on December 2, 1937, levied upon certain dairy stock in Imperial County belonging to defendant Bob Beretta and defendant Rufina Beretta, his wife, worth, according to the court's findings, $2,000.

It appears that in the meantime Beretta, in order to acquire his dairy had obtained from respondent Security First National Bank of Los Angeles certain loans and advances, represented by two promissory notes executed by him on April 28, 1932, in favor of said bank in the respective principal sums of $6,850 and $650, which were secured by a chattel mortgage of even date therewith, wherein there was mortgaged to the bank the dairy stock or the dairy stock from which, by replacement and natural increase, there resulted the dairy stock levied upon by Sartori as above stated. This mortgage, among other things, provided for further advances to Beretta and that the repayment thereof, in addition to the sums represented by the notes, should be secured thereby. In addition to said chattel mortgage Beretta executed to the bank two crop mortgages, as further security for his indebtedness to it, but at the time of Sartori's execution levy these additional crop. mortgages were of no value as security, and the bank held no other substantial security for its money than Beretta's original chattel mortgage to it affecting the stock levied upon by Sartori. Beretta was insolvent and had no other resources than said dairy stock. It further appears that the said chattel mortgage to the bank was recorded on May 16, 1932, and that no rerecordation of this chattel mortgage ever occurred pursuant to the provisions of section 2957 of the Civil Code as amended by the legislature in the respective years of 1935 and 1937.

Respondent bank on April 24, 1936, filed in Imperial County the present action against Beretta to foreclose the said chattel mortgage together with the two crop mortgages and after Sartori had levied his execution, filed in said action an amended and supplemental complaint adding as parties to the foreclosure action Beretta's wife, Rufina, and also Sartori and the sheriff of Imperial County. Sartori answered, claiming that his rights under his execution lien were paramount to those of the bank under its chattel mortgage in consequence

of the bank's failure to rerecord the latter as provided by said amended statute.

At the time Sartori's execution was placed in the sheriff's hands it was accompanied by written instructions to levy on the dairy stock and also by an affidavit made by one Heinrich, an employee of Sartori's counsel, purporting to be made pursuant to section 2969 of the Civil Code, in which affidavit it was *inter alia* said "that on the 28th day of April, 1932, judgment debtors gave to the Security First National Bank of Los Angeles their note and mortgage on certain cattle, which mortgage was duly recorded in the official records of Imperial County, State of California, in Book 351, at page 21; that more than four years have now elapsed since the filing and recording of said mortgage. Therefore this affiant alleges the fact to be that the said mortgage is now of no legal effect as to this plaintiff . . . ". This affidavit did not in terms state that the mortgage had not been rerecorded. It did go on to say that Sartori wished to levy on "sufficient personal property, as set forth in said mortgage" to satisfy his judgment, and that he filed with it his indemnity bond under the provisions of said code section. The record shows that this bond ran to the sheriff and respondent bank and that the amount of its penalty was $2,000. It recited that the estimated value of the cattle to be levied on was $1,000, and that "the plaintiff herein requires of said sheriff that he shall retain said property under levy and sell the same to satisfy said judgment, together with interest and costs". Upon the filing of the amended complaint the court restrained the threatened sheriff's sale but appointed a receiver who took possession of the dairy stock. After trial of the cause the court rendered judgment in favor of the bank for $3,826.78 principal, together with various further sums due by way of interest, costs and attorney's fees, foreclosing its mortgage and determining that the same was paramount to Sartori's execution lien. From that judgment Sartori now appeals.

It is necessary at the threshold of the discussion to deal with the contention advanced in respondent's behalf that the appellant's levy was unauthorized and invalid for want of compliance with said section 2969 of the Civil Code. It is claimed that it adequately complies neither with the requirement of that section that the execution creditor shall

present to the officer called upon to make the levy "a verified statement that the mortgage is void or invalid for reasons therein stated", nor yet with the requirement that he shall deliver to such officer "a good and sufficient undertaking in double the amount of the mortgage debt or double the value of the mortgaged property . . . ". As respects the former of these requirements we have seen that the affidavit presented assigns as the reason why the mortgage was claimed to be void merely the circumstances that "more than four years have now elapsed since the filing and recordation of such mortgage". We think the language so used, though perhaps somewhat inartificial, was sufficient. It seems to us substantially equivalent to a statement that more than four years had elapsed since *any* filing and recordation of said mortgage. To be sure the rerecordation may, under the terms of section 2957, be either at large or in the form of a certificate referring to the former record and reciting that the instrument is thereby "re-recorded". Even this alternative method, however, is recognized by the section as a means of recordation, and we think that the statement in the affidavit would be properly referable to the last recordation made, if there were more than one. ██ As respects the undertaking it is true that it is not either in "double" the amount of the mortgage or in "double" the value of the dairy stock, as the court found such value to be. The statute, however, does not require the execution creditor to anticipate the court's findings on the subject of value. If the permitted alternative of using double the value of the mortgaged property rather than double the amount of the mortgage, as the criterion in fixing the amount of the undertaking, is valid, then the statutory provision is that such amount shall be "such as the officer may determine and require". While the undertaking is for the indemnification both of the sheriff and of the mortgagee, in the event of an unlawful levy, yet the officer is liable to the mortgagee for any misfeasance on his part under his official bond, and, as it was necessary to invest someone with the right in a preliminary way to determine the value of the mortgaged property in order to "determine" the amount of the undertaking required, the legislature has seen fit to invest the officer with that authority. If, in making his determination, he makes *bona fide* use of his judgment, that is all that the law demands. If, contrariwise, the officer is guilty of any miscon-

duct in the matter, his liability therefore on his official bond would presumably be sufficient protection for the mortgagee. We do not think that the fact that in the instant case the valuation placed on the cattle was only half that subsequently found correct by the court, in the absence of fraud on the part of the execution creditor, has any bearing on the validity of the levy.

█ We come, then, to the main questions in the case, which are thus stated in the opening brief for the appellant:

"First: Are chattel mortgages which were made and recorded prior to the year 1935, when the re-recording provision of Section 2957 of the Civil Code was first enacted, exempted or excused from compliance with the said provision?

"Second: Did the commencement of this foreclosure suit within four years of the original recording of the chattel mortgage relieve the mortgagee from a necessity of compliance with said provision of that section?"

Neither of these inquiries is squarely answered by any decision to which our attention has been called in this state. In *Bank of California* v. *McCoy*, (Cal. App.) [69 Pac. (2d) 1013], it was originally held by the District Court of Appeal for the Third District, in a case where a chattel mortgage recorded on June 1, 1930, had not been rerecorded, and on May 6, 1935, a judgment creditor of the mortgagor levied on the mortgaged property and on May 29, 1935, caused it to be sold by the sheriff, that the lien of the mortgage had expired on June 1, 1934, and that, therefore, the judgment creditor's levy and sale were good. In this decision, however, the circumstance that the amendment of section 2957 requiring the rerecordation, as enacted in 1935, did not become effective until July 20, 1935, and therefore could not in any event have been effective to cause an expiration of the mortgage lien on June 1, 1934, nor yet at the time of the execution creditor's levy and sale, was overlooked. Upon this being called to the court's attention it granted a rehearing and otherwise disposed of the case. [*Bank of California* v. *McCoy*, 23 Cal. App. (2d) 192 (72 Pac. (2d) 923).]

It is claimed in respondent's behalf that the requirement that a chattel mortgage be rerecorded within some given time after its original recordation or, in default thereof, be void against creditors of a mortgagor, cannot be applied to mort-

gages in existence at the time the requirement was enacted, consistently with section 10 of article 1 of the federal Constitution forbidding any state to violate the obligations of contracts, section 1 of the fourteenth amendment to the federal Constitution forbidding any state to deprive any person of life, liberty or property without due process of law, and section 13 of article 1 of the state Constitution making the same inhibition. In considering this contention certain well recognized distinctions must be observed. "The lender who has taken a mortgage of personal property, and has had it executed and recorded as required by law, has acquired a right of property." (*Hammels* v. *Sentous,* 151 Cal. 520, 523 [91 Pac. 327, 12 Ann. Cas. 945].) It necessarily follows that a statute purporting, for example, to make unconditionally void a previously valid and duly recorded chattel mortgage, would manifestly be invalid. So, likewise, would a statute enacted after the making and recordation of such chattel mortgage purporting unconditionally to subordinate a mortgage lien to some other lien, as, for example, that of a livery stable keeper upon mortgaged horses placed in his charge by the mortgagee, be invalid. (*National Bank of Commerce* v. *Jones,* 18 Okl. 555 [91 Pac. 191, 11 Ann. Cas. 1041, 12 L. R. A. (N. S.) 310].) Ordinarily, however, there is some statutory limitation upon the time following the maturity of the obligation secured by such mortgage within which action must be brought upon it or else be forever barred. Nevertheless it is settled law that the time following the maturity of a cause of action allowed for commencing such action may be cut down by legislation subsequent to the contract or occurrence giving rise to the cause of action, provided only that after the effective date of such legislation reasonable time still remains for commencing the action. (*Doehla* v. *Phillips,* 151 Cal. 488 [91 Pac. 330]; *Rossi* v. *Caire,* 186 Cal. 544 [199 Pac. 1042]; *Davis & McMillan* v. *Industrial Acc. Com.,* 198 Cal. 631, 636, 637 [246 Pac. 1046, 46 A. L. R. 1095]; *Coleman* v. *Superior Court,* 135 Cal. App. 74, 78 [26 Pac. (2d) 673]; *Reynolds* v. *Jensen,* 14 Cal. App. (2d) 558 [58 Pac. (2d) 687].) A common expression of the rule is that no one has a vested right in any particular allowance of time unless it has already run in his favor. That is as much as to say that, though his substantive right has been already created, he may be required by a change of statute

to take affirmative action to preserve and enforce it within a shorter time than would have been allowed him for so doing by the statute in force when his right came into being. By analogy, no reason would appear to exist why, since he may thus be required by legislation subsequent to the initiation of his right to actually bring action to enforce it within a shorter period, such subsequent legislation may not also, without being held to impair his right, require him to do something else, not unreasonably burdensome, to keep his right alive, such, for instance as the giving to the public of some reasonable notice of its continued existence.

Statutes providing for the rerecordation of mortgages or other methods of making some public record of their continued existence are very common. As was said in *Commercial Security Bank of Ogden* v. *Chimes Press (Zion's Sav. Bank & Trust Co., Intervener)*, 88 Utah, 148 [42 Pac. (2d) 990, 993]:

"The purpose of the filing statute has been stated, and we think correctly, by this court in *Volker Lumber Co.* v. *Utah & Oregon Lumber Co.*, 45 Utah, 603 [148 Pac. 365, 367, Ann. Cas. 1917D, 1158], as follows: 'Now, it is universally held by the courts, and such clearly is the purpose of the statute, that, under a statute like ours, filing, if it is required, or recording, where that is necessary, in law is the equivalent of taking possession by the mortgagee, and hence the statute is construed to mean that the mortgage is invalid as against the class of persons aforesaid only so long as it is not filed or recorded, unless it is withheld from record so long that fraud may be inferred from the delay. When it is filed or recorded, however, it is the same, in legal effect, as though possession were taken, and the mortgage is valid as against all who become creditors of the mortgagor after such filing or recording, unless it can be declared invalid upon the ground of fraud or for some reason other than that it was not filed or recorded'.

"It would follow that a refiling is required for a cognate purpose. If the filing of the mortgage is of the same legal effect as the taking of possession by the mortgagee, and is in lieu thereof, then it must be that failure to refile within the statutory time would have the same legal effect as if the property were returned by the mortgagee to the possession of the mortgagor. Failure to refile would give notice to the

world that the mortgage is no longer a valid and subsisting lien on the property described therein, or, to use the statutory language, the mortgage is void as to creditors. We think that cannot mean anything other than as to creditors, whether prior or subsequent, the property is now freed from the mortgage lien. Credit may then be extended to the owner on the theory that the property is freed from the mortgage lien, or the property may be levied upon by any creditor, either prior or subsequent, on the theory that the property is no longer subject to the mortgage. Creditors, as used in the statute, would include creditors who become such during the period of original filing. (11 C. J. 545; *First Nat. Bank of Rock Springs* v. *Ludvigsen*, 8 Wyo. 230 [56 Pac. 994, 57 Pac. 934, 80 Am. St. Rep. 928]; *First Nat. Bank* v. *Magner*, 47 S. D. 80 [195 N. W. 1020].) If the property had been taken into possession by a mortgagee and later, upon payment of the mortgaged debt, its possession had been returned, or, upon payment of the mortgaged debt after filing, any creditor armed with process would have a right to attach the property or to sell it under execution. The purpose of section 474 is to clear the record made by the filing of the mortgage pursuant to section 470 by raising the conclusive presumption of payment where there is no filing of a renewal affidavit as therein provided. (*Hanson* v. *Blum*, 53 N. D. 526 [207 N. W. 144].)''

While, as we have just said, statutes requiring the rerecordation of mortgages are numerous, the cases cited to us in which there has arisen the precise question of the applicability of such statutes to mortgages previously made, are relatively few. It was, however, held in *Stevenson Brewing Co.* v. *Eastern Brewing Co.*, 22 App. Div. 523 [48 N. Y. Supp. 89], that the requirement of chapter 354 of the New York laws of 1895 that in order to keep a chattel mortgage in force from year to year a statement must be filed annually, showing, among other things, ''the time when and the place where'' the mortgage was filed, applied to all subsequent extensions, even though of mortgages originally filed prior to the act, and that the designation of time and place is an essential part of the statement. The court said (p. 91):

''The application of that principle in the present case does not exclude from the effect of the amended statute that which is required to be done subsequently to continue the validity

of the mortgage as against creditors of the mortgagor. Such application is prospective."

In *Aultman & Taylor Machinery Co.* v. *Fish,* 120 Ill. App. 314, 315, 316, it was said:

"At the time the mortgage from Anderson to appellant was executed the law provided for an entension of chattel mortgages for a period of not more than two years, but the legislature subsequently amended the act . . . providing that an extension would not be made for more than one year, and one of the questions raised by the record is, whether the amendment affected chattel mortgages already in force when it was adopted and went into effect.

"Counsel for appellant contended that the law which was in force at the time of the execution of the original mortgage enters into and forms a part of the contract existing between the parties, and that the amendment should not be held to affect it, because that would be giving effect to a law that impaired the obligation of contracts. The amendment referred to did not affect or impair the obligation of the contract between the parties. It only affected the remedy.

"At the time of the passage of the amendment and its taking effect, shortening the period for which an extension might be made, the parties had made no contract that was affected by it. The two years for which the mortgage was good had not expired and did not expire until . . . after the amendment took effect. While the law in force at the time the mortgage was executed authorized an extension for two years, no extension was made before the law was changed by the act of 1903, shortening the period of extension to one year. If the mortgage had matured and the extension had been made before the taking effect of the act of 1903, then it would not have applied to the extension, for that would have impaired the obligation of the contract."

In *Stone* v. *Bassett,* 4 Minn. 298 [2 Gil. 215], the statute of that state which prescribed the terms and conditions upon which a mortgagor might retain the possession of the property after foreclosure and during the time allowed for redemption, was held to affect only the remedy and to be valid and applicable to mortgages existing before its passage.

In fine it seems to us that the trend of authority indicates that such legislation as that under discussion is generally treated as going to the remedy only and not to the substantive

right and therefore to be such legislation as may, without violation of the constitutional provisions referred to, be made applicable to mortgages already existing. Of course, it is a somewhat different question whether in any given case the legislature, even assuming its constitutional right to do so, has intended legislation to apply to obligations already in existence. On that subject, however, it was said in *Aullman & Taylor Machinery Co.* v. *Fish, supra* (p. 316) :

"While the rule as repeatedly announced in this state is that statutes are prospective and will not be construed to have retroactive operation unless the language employed in the act is so clear it will admit of no other construction, this rule applies only to statutes which affect some vested interest under a prior law.

"It must be something more than mere expectation based on an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of the property, or the present or future enforcement of a demand, or a legal exemption from a demand made by another. (Suth. on Statutory Const., sec. 164.) Statutes relating merely to remedies and forms of procedure are held not to belong to that class, where they do not affect the substantial rights of the parties, and such statutes apply to past contracts as well as future."

This, of course, is the view usually taken with respect to statutes of limitations, as illustrated by authorities already cited and while not precisely a statute of limitation within the ordinary use of that term the enactment under discussion is strongly analogous to one. On the whole, therefore, we think that the amendments of 1935 and 1937 to section 2957 of the Civil Code are applicable to respondent's mortgage and that it was incumbent upon respondent to cause the same to be rerecorded if the same was to have continued valid as against the claims of Beretta's creditors.

It is finally claimed in respondent's behalf that the circumstance that it brought its foreclosure action within the life of the mortgage under discussion, that is, before the lapse of the four years after its original recordation, obviated the necessity for a rerecordation. The action, of course, was not one affecting real estate and therefore the provisions of section 409 of the Code of Civil Procedure providing for a notice of *lis pendens,* are inapplicable. In *Commercial Se-*

*curity Bank of Ogden* v. *Chimes Press, supra,* it was held that the rule laid down by a certain former decision in Utah holding that the recording of a notice of *lis pendens* in an action for foreclosure of a chattel mortgage "gave constructive notice that the mortgage remained unpaid and the mortgagee need not take possession of the property", was abrogated by the passage of the statute requiring recordation of notice of the extension, the court saying:

"It is nowhere provided in that statute that the mortgage shall be void unless suit is commenced or notice of *lis pendens* filed. It was merely stated that such mortgage shall be void unless the affidavit there required be filed within a period of 90 days after maturity of the debt, the entire time not to exceed one year."

On the other hand, in *Breeze* v. *Bayne,* 202 N. Y. 206 [95 N. E. 727], there was involved a statute requiring that, in order to continue good against creditors of the mortgagor, a chattel mortgage, within 30 days preceding the expiration of one year from its first filing, be rerecorded or refiled, accompanied by a certain statement. The mortgagor had executed three chattel mortgages to the same mortgagee which were originally filed on different dates. The statute requiring the rerecording of the mortgages and the filing of the statements was not complied with. Before one year had expired after the filing of the last of these mortgages but after the expiration of one year from the filing of each of the first two, a representative of the mortgagee commenced proceedings by advertisement to sell out the mortgaged property under power of sale contained in the mortgages and did sell the same out accordingly. Pending these foreclosure proceedings, however, an execution creditor of the mortgagor levied on the mortgaged property. The trial court found that when the mortgagee's representative commenced his foreclosure proceedings, that is, before the year following the filing of the last mortgage had expired, he undertook to take possession of the mortgaged property and succeeded in securing from the officer then in actual possession of the same under the judgment creditor's levy an agreement to keep it for the mortgagee. The court of appeals held that this amounted to taking constructive possession of the property within the year following the filing of the third mortgage and that under the New York cases (citing *Porter* v. *Parmley,* 52 N. Y. 185,

*Steele* v. *Benham,* 84 N. Y. 634, and *Tremaine* v. *Mortimer,* 128 N. Y. 1 [27 N. E. 1060]), where a mortgagee operating under power of sale takes possession, actual or constructive, of the mortgaged property within the year, the refiling statute ceases to apply. As to the property involved in the first two mortgages then, it was held that the purchaser got no title good as against the execution creditor, but as to that involved in the last mortgage it was held that he did.

In *Crutts* v. *Daly,* 84 Misc. 192 [145 N. Y. Supp. 850], it appeared that the mortgagee under a chattel mortgage authorizing him to take possession of the mortgaged property in the event of its becoming unsecure, before the maturity of the mortgage debt and before the expiration of a year from the original filing of the mortgage, commenced a replevin action against the sheriff who held the property under an attachment junior to the mortgage levied against the property of the mortgagor who had absconded. The mortgagee whose replevin action continued pending at the time the year following the filing of his mortgage expired, omitted within such year to refile his mortgage. The court held that in the circumstances the pendency of his replevin action obviated the necessity for his doing so. The court said that had the mortgagee actually taken possession of the chattels the subsequent refiling of his mortgage would have been unnecessary (citing *Breeze* v. *Bayne, supra*) and that the commencement of the action was the equivalent of taking possession as against the sheriff who ought to have delivered the property to the mortgagee on demand, that the rights of the parties were fixed thereby and that the attaching creditor wrongfully withholding possession through his agent the sheriff, could not claim the protection of the refiling statute.

The question being one of first impression in this state, we incline to the view that the commencement of the foreclosure action within the period during which the original recordation of the mortgage, *ex proprio vigore,* sufficed to create and keep alive as against the public generally the mortgage lien, ought to be held to have so fixed the rights of the parties as to render any subsequent rerecordation of the mortgage needless. It is true that in so holding we must decline to follow the above-quoted language of the Supreme Court of Utah to the contrary. It is also true that the above-cited New York cases dealing with the subject are not precisely analogous to

the case at bar. They proceed upon the theory that, in providing for rerecording of mortgages, the statute is, in effect, providing a substitute for the notice to the public of a mortgagee's rights that would result if he were in possession of the property; and that when, within the time that the original filing or recording was effectual, he actually or constructively takes possession of the property, the result, on the principle *cessante ratione cessat lex,* is necessarily to dispense with any need of rerecordation. It may be pointed out, however, that in neither the situation involved in *Breeze* v. *Bayne, supra,* nor yet that involved in *Crutts* v. *Daly, supra,* did the mortgagee actually take possession of the property; that at least in the last-mentioned case it is only by a stretch of logic that he could even be said to have been in constructive possession of it, and that in any event such constructive possession would afford no physical evidence to the public generally of what his actual rights were or that he had any. In these circumstances the view that by commencing a replevin suit, unaccompanied by an actual change of possession of the property affected, the mortgagee placed himself in a position equivalent to that which would have been his had he rerecorded his mortgage, in practical effect differs very little from holding that a foreclosure action would produce the same result. It is the law of California that he who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact. (Civ. Code, sec. 19.) There can be no question in the instant case, as sufficiently appears from Heinrich's affidavit filed in his behalf, that appellant Sartori had actual notice that Beretta had been indebted to the bank and had given a mortgage on the property here involved to secure that indebtedness. From this notice Sartori would be required to assume that such indebtedness continued until the contrary appeared unless relieved from so doing by section 2957 of the Civil Code. If, during the period that the original recordation of the mortgage was fully effective, the bank exercised its right to commence a foreclosure action, it manifestly could have commenced one only in the court having jurisdiction thereof. It does not seem to us in these circumstances that it would cast any unreasonable burden upon one intending to levy upon the property of Beretta to require him,

instead merely of searching the records in the recorder's office for a possible rerecordation of the chattel mortgage, to also make inquiry in the court having jurisdiction to entertain a foreclosure suit thereon as to whether such suit had been commenced. It is very true that any rights Sartori already had could not be the subject of adjudication in such foreclosure action until or unless he was made a party to it, but the question now under discussion is not one of subjecting him to adjudication prior to his being made a party to the action, but simply whether the circumstances were such that he ought to have taken notice of the pendency of the action, and whether or not his obligation to do so should, so far as he was concerned, be held to dispense with any necessity for the rerecordation generally required by said section 2957. While the New York cases above referred to would not, though we were to follow them, absolutely compel the answer that we have made to these questions, they are, nevertheless, to our minds strongly persuasive of their correctness. It so happens that in the instant case the result reached accords with the equities.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.