[Civ. No. 16450.  Second Dist., Div. One.  Dec. 29, 1948.]

ROBERT L. ROMBOTIS, Appellant, v. MENDELL E. FINK, Respondent.

Robert E. Rosskopf for Appellant.

Fred N. Howser, Attorney General, Edward G. Benard, Deputy Attorney General, John J. O'Toole, City Attorney (San Francisco), Everett M. Glenn, City Attorney (Sacramento), C. M. Ozias, City Attorney (Fresno), J. F. DuPaul, City Attorney (San Diego), Clyde Woodworth, City Attorney (Inglewood, Southgate, El Segundo and Manhattan Beach), J. F. Coakley, District Attorney (Alameda), Charles J. McGoldrick, District Attorney (Sonoma), M. Arthur Waite, District Attorney (Ventura), Harold W. Kennedy, County Counsel (Los Angeles), A. Curtis Smith, Assistant County Counsel, John D. Maharg, Deputy County Counsel, and Floyd B. Cerini, as Amici Curiae on behalf of Appellant.

John F. Bender, Gizella M. Allen and Max B. Zimmerman for Respondent.

Roscoe R. Hess as Amicus Curiae on behalf of Respondent.

WHITE, J.—Plaintiff and cross-defendant has appealed from a judgment of the superior court refusing to quiet his title to real property against the lien of a street improvement bond held by defendant and decreeing foreclosure of such bond on defendant's cross-complaint.

The undisputed facts are that plaintiff holds fee title to the real property in question, which title he acquired as a "bona fide purchaser for value" on August 18, 1947. Defendant holds Street Improvement Bond 28, County Improvement No. 716, issued under the County Improvement Act of 1921 (Stats. 1921, p. 1658). This bond was issued as a lien against the property, dated November 14, 1929, and was payable in 10 annual installments of principal, with semiannual interest. The last principal coupon thereon was payable January 2, 1940. The bond is in default in the sum of $99.05 principal, together with interest and penalties from July 2, 1933. The

bond had not been foreclosed by court action or through the county treasurer's office and no action for foreclosure was pending at the time the present action was brought. More than four years elapsed between the due date of the last installment on the bond and the acquisition of title to the property by plaintiff.

The real property became delinquent for county taxes for the fiscal year 1932-1933; was sold to the State of California in 1933; and on July 1, 1938, was conveyed to the State of California under the provisions of section 3785 of the Political Code. The state retained title until February 14, 1946, on which date the property was redeemed by plaintiff's predecessor in title.

Plaintiff brought the present action to quiet title and for declaratory relief, claiming that the lien of the bond had been extinguished under section 2911 of the Civil Code, as amended in 1945 (Stats. 1945, ch. 361, § 1), and section 330 of the Code of Civil Procedure, enacted in 1945 (Stats. 1945, ch. 360, § 1). Defendant by his answer asserted that his bond was a valid and subsisting lien which could not be extinguished in any manner except by payment; that the 1945 amendments were unconstitutional as to bonds issued before their enactment; and that during the period that the state held legal title to the property, from July 1, 1938, to February 14, 1946, the defendant and his predecessors in interest were prohibited by statute from prosecuting an action to foreclose the lien of the bond, and that therefore the time within which said lien could be foreclosed by the county treasurer, as provided in the County Improvement Act of 1921, had not expired. By cross-complaint defendant prayed for foreclosure of the bond lien. In his answer to the cross-complaint plaintiff set up the statute of limitations under section 76(a) of the Improvement Act of 1911 as incorporated in the County Improvement Act of 1921, and separate defense, that the lien of the bond had been extinguished under section 2911 of the Civil Code.

The court found the bond to be a valid and subsisting lien; that the statute of limitations on foreclosure thereof was tolled while the property was owned by the state; that defendant and cross-complainant was entitled to a court foreclosure, and rendered judgment accordingly, from which judgment the present appeal is prosecuted.

The questions involved, as stated in appellant's opening brief, are: (1) Is the 1945 amendment to section 2911 of the

Civil Code a valid statute of limitations as to preexisting bonds? (2) Is the statute of limitations on foreclosure of street improvement bonds tolled while the property is in state ownership under a tax deed?

Prior to its amendment in 1945, section 2911 of the Civil Code, under the article entitled "Extinction of Liens," read as follows:

"A lien is extinguished by the lapse of the time within which, under the provisions of the Code of Civil Procedure, an action can be brought upon the principal obligation."

At the 1945 session of the Legislature, the section was amended to read as follows:

"A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure, either:

"1. An action can be brought upon the principal obligation, or

"2. A treasurer, street superintendent or other public official may sell any real property to satisfy a public improvement assessment or any bond issued to represent such assessment and which assessment is secured by a lien upon said real property; whichever is later.

"Anything to the contrary notwithstanding, any lien heretofore existing or which may hereafter exist upon real property to secure the payment of a public improvement assessment shall be presumed to have been extinguished at the expiration of four years after the due date of such assessment or the last installment thereof, or four years after the date the lien attaches, or on January 1, 1947, whichever is later, or in the event bonds were or shall be issued to represent such assessment, the lien shall then be presumed to have been extinguished at the expiration of four years after the due date of said bonds or of the last installment thereof or of the last principal coupon attached thereto, or on January 1, 1947, whichever is later. The presumptions mentioned in this paragraph shall be conclusive in favor of a bona fide purchaser for value of said property after such dates."

At the same session the Legislature added section 330 to the Code of Civil Procedure, under the title headed "Time of Commencing Civil Actions," which section reads as follows:

"In all cases in which there is now vested or there shall hereafter be vested in a treasurer, street superintendent, or other public official the power to sell at public auction, after demand upon him by the holder of any public improvement bond, any lot or parcel of land upon which exists or which

shall hereafter exist a lien to secure the payment of a public improvement assessment represented by said bond, and the act or law establishing such power fails to prescribe the time within which such official may act, said official may sell at any time prior to the expiration of four years after the due date of said bond or of the last installment thereof or of the last principal coupon attached thereto, or prior to January 1, 1947, whichever is later, but not thereafter. This section is not intended to extend, enlarge or revive any power of sale which has heretofore been lost by reason of lapse of time or otherwise.''

The bond held by respondent was issued under the County Improvement Act of 1921 (Stats. 1921, p. 1658), which act made applicable to counties and adopted by reference the provisions of the Improvement Act of 1911 (Stats. 1911, p. 730). The latter act is now incorporated in the Streets and Highways Code, sections 5000 to 6794. Section 23 of the Improvement Act of 1911 (now Sts. & Hy. Code, § 5372), provided, at the time respondent's bond was issued:

"Said warrant, diagram and assessment, shall be recorded in the office of said superintendent of streets. When so recorded the several amounts assessed shall be a lien upon the lands, lots, or portion of lots assessed, respectively, *and such lien shall so continue until it be discharged of record.* . . .'' (Emphasis added.)

Section 63 of the 1911 act (Sts. & Hy. Code, § 6460) provided, with reference to the bond: ''. . . Its amount is the amount assessed in said assessment against the lot or parcel of land numbered therein, and in the diagram attached thereto, as number ——, and which now remains unpaid, *but until paid,* with accrued interest, *is a lien* upon the property affected thereby. . . .'' (Emphasis added.)

Section 66 of the same act (Sts. & Hy. Code, § 6446), provided: ''. . . and said assessment shall be a first lien upon the property affected thereby until the bond issued for the payment thereof, and the accrued interest thereon and the penalties, if any, *shall be fully paid* according to the terms thereof. . . .'' (Emphasis added.)

At this point it would be well to dispose of a contention of respondent that ''The 1945 amendments, being general, do not affect the Improvement Act of 1911, which is special.'' Authority is cited in support of the general rule that an act of general character will not ordinarily repeal a special act, even though the former is enacted subsequently.

(*Ahern* v. *Livermore U. H. S. District,* 208 Cal. 770, 783 [284 P. 1105].) The 1945 enactments of the Legislature, however, disclose a complete revisory plan with reference to the duration and extinction of assessment liens. In addition to the enactment of sections 330 and 2911, above quoted, the Legislature amended the Assessment Bond Refunding Act of 1933, the Improvement Act of 1911, the Street Improvement Act of 1913, the Street Opening Act of 1903, the Street Opening Bond Acts of 1911 and 1921 and the Street Opening Act of 1889, to provide, generally, that the lien of bonds or assessments should expire four years from the date of the last installment, whereas theretofore these acts provided variously that the lien should continue "until paid," "fully paid," or provided no duration period. It also amended section 329 of the Code of Civil Procedure to provide a two-year limitation on liens arising under street improvement proceedings taken under other than state laws. In the amendments to the various improvement acts no reference is made to liens already in existence, but in sections 329 and 330 of the Code of Civil Procedure, and in section 2911 of the Civil Code, the Legislature made express and specific provision for the extinction of such liens. These enactments reflect a clear purpose to provide a definite statute of limitations as to all liens arising under special assessments. They constitute a "revision of the entire subject," within the rule set forth in *Penziner* v. *West American Finance Co.,* 10 Cal.2d 160, 176 [74 P.2d 252]: ". . . In *Sponogle* v. *Curnow,* 136 Cal. 580, 584, [69 P. 255], the rule is briefly stated as follows: 'Although an act or part of an act may not be repealed expressly or by necessary implication, still a revision of the whole subject matter covering said act would supersede all such portions as were omitted from the revisory act. . . .'"

It is plain from its comprehensive enactments that the Legislature intended to and did provide a definite statute of limitations and a definite period of time upon the expiration of which street improvement liens would be not only unenforceable by foreclosure but also would be presumed to have been extinguished; and further that the Legislature intended its enactments to apply retrospectively, giving the holders of liens which had theretofore attached either four years or until January 1, 1947, whichever was later, in which to take action. The legislation took effect September 15, 1945, thus giving the holders of old liens 15½ months in which to act.

It is appellant's position that the 1945 amendments to section 2911 and the enactment of section 330 are valid statutes of limitation; that they do not impair the obligation of contracts as to bonds or assessments already in existence, nor deprive the lienholder of a property right without due process of law. Respondent, however, urges that the amendments are not true statutes of limitation, but are designed to destroy the lien; that section 330 of the Code of Civil Procedure destroys the power of the treasurer to sell, while section 2911 of the Civil Code imposes a conclusive presumption that the lien has been extinguished. Respondent points out that under the improvement act when the bond was issued the lien continued until paid, and contends that this lien itself, and its continuation until paid, are parts of the contract rights of the bondholder and cannot be impaired by subsequent legislation. Further, it is contended, the amendments violate due process, in that they have the effect of taking the property of one and giving it to another.

The question, therefore, is whether, by applying the 1945 enactments to preexisting bonds, respondent is deprived of a substantial contract or property right under the guise of alteration of the remedy, or whether the situation falls within the general rule that no one has a vested right in a statute of limitation or in a remedy, provided a reasonable time is allowed after an amendment shortening the time, and the remedy is not substantially impaired.

In *County of San Bernardino* v. *Way*, 18 Cal.2d 647, 661 [117 P.2d 354], which involved a refunding proceeding of bonds of an improvement district, the court said:

"Laws in existence at the time of the issuance of municipal bonds, under the authority of which such bonds are issued, enter into and become a part of the contract to such an extent that the obligation of the contract cannot thereafter be impaired or fulfillment of the bond obligation hampered or obstructed by a change in such laws. (*United States ex rel. Von Hoffman* v. *City of Quincy*, 4 Wall. (71 U.S.) 535, 550 [18 L.Ed. 403].) Nothing is more material to the obligation of a contract than the means of enforcement. The ideas of validity and remedy are therefore inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment. (*Walker* v. *Whitehead,* 16 Wall. (83 U.S.) 314, 317, 318 [21 L.Ed. 357].) But a contract obligation is not impaired by a change of law unless such alternation deprives

a party of a substantial right or remedy. (*Sturges* v. *Crowninshield,* 4 Wheat. (17 U.S.) 122, 200 [4 L.Ed. 529].) This important limitation, defining the character of the rights deemed to be within the protection of the constitutional inhibition under consideration, was approved in the leading case of *United States ex rel. Von Hoffman* v. *City of Quincy, supra,* at pages 553, 554: 'It is competent for the States to change the form of the remedy or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances.'

"Consonant with these basic principles, it is manifest that if, notwithstanding a modification of law, the party can enforce his rights with substantially the same degree of effectiveness as before, his contract rights have not been violated. . . . ."

The determination of whether the contract rights of the holders of bond or assessment liens have been violated, or whether such holders have been deprived of property without due process of law, involves substantially the same considerations.

In our opinion, the legislation here in question satisfies the requirements of due process and does not impair the obligation of contracts within the meaning of the constitutional inhibitions. It is to be noted that the Legislature did not *ipso facto* extinguish any substantial right. The remedy of foreclosure in court or through sale by a city or county treasurer or other official was preserved by granting what the Legislature deemed a reasonable time after the effective date of the legislation for the bondholder or lienholder to take action. The authorities are legion upholding the constitutionality of statutes of limitation applicable to existing contract rights under which the parties are given a reasonable time after the statute becomes effective within which to enforce their rights. (*Terry* v. *Anderson,* 95 U. S. 628 [24 L.Ed. 365]; *United States* v. *Morena,* 245 U.S. 392 [38 S.Ct. 151, 62 L.Ed. 359]; 34 Am.Jur. 26; 12 Am.Jur. 89.)

[3] The answer to the argument that the law in existence at the time of the issuance of the bonds or levying of the assessment enters into and becomes an essential part of the contract, is that the rule contended for is subject to the long and well

established exception that the parties have no vested right in a statute of limitation (*Terry* v. *Anderson, supra*); that they contract in the light of the power of the Legislature to modify or change existing remedies or prescribe new modes of procedure, provided a substantial and efficacious remedy remains (*National Surety Co.* v. *Architectural Decorating Co.*, 226 U.S. 276 [33 S.Ct. 17, 57 L.Ed. 221); that the time "following the maturity of a cause of action allowed for commencing such action may be cut down by legislation subsequent to the contract . . . provided only that . . . reasonable time still remains" (*Security-First National Bank* v. *Sartori*, 34 Cal.App.2d 408 [93 P.2d 863]). In the last-cited case it was said: " . . . A common expression of the rule is that no one has a vested right in any particular allowance of time unless it has already run in his favor. That is as much as to say that, although his substantive right has been already created, he may be required by a change of statute to take affirmative action to preserve and enforce it within a shorter time than would have been allowed him for so doing by the statute in force when his right came into being. By analogy, no reason would appear to exist why, since he may thus be required by legislation subsequent to the initiation of his right to actually bring action to enforce it within a shorter period, such subsequent legislation may not also, without being held to impair his right, require him to do something else, not unreasonably burdensome, to keep his right alive, such, for instance as the giving to the public of some reasonable notice of its continued existence."

The parties contract not only in the light of existing law but also in the light of the long established power of the Legislature to alter existing remedies and to enact statutes of repose. The Supreme Court of the United States, in *Gelfert* v. *National City Bank,* 313 U.S. 221 [61 S.Ct. 898, 85 L.Ed. 1299, 133 A.L.R. 1467], upholding an amendment relative to determining the amount of deficiency judgments as applied to existing mortgages, said:

"The formula which a legislature may adopt for determining the amount of a deficiency judgment is not fixed and invariable. That which exists at the date of the execution of the mortgage does not become so embedded in the contract between the parties that it cannot be constitutionally altered. As this court said in *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U.S. 398, 435 [54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481], not only are existing laws read into contracts in order to

fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order.''

Respondent's argument, in substance, is that under the law in existence at the time the bonds were issued, the bondholder acquired a right, which no Legislature could take from him, to a lien that could be extinguished only by payment—an indefeasible perpetual lien, that could not be lost however long the lapse of time and no matter how indifferent or neglectful he might be in taking action to enforce his rights. Such a proposition cannot be sustained. Under the authorities heretofore cited there can be no doubt of the power of the Legislature to prescribe a time limit—provided only that it be a reasonable time—within which a right must be enforced or a remedy invoked, under penalty of loss not only of the remedy but of the right itself. In *Rand* v. *Bossen,* 27 Cal.2d 61 [162 P.2d 457], the court had under consideration the constitutionality of a section permitting a property owner to turn in bonds in payment of assessments against his property and limiting to six months the time within which action might be taken to attack any credit allowed for such turn-in. The court there said: ''We find no impairment of the bondholder's contract by section 3480g. Assuming his contract embraces the right to have the assessments paid in cash and that *all* remedies for the enforcement of that contract cannot be taken away, section 3480g does not purport to achieve that result. It merely fixes a *time limit* during which he may assert the right. . . .''

So here, adequate time was allowed any bondholder to preserve any right which he might have. Adequate protection was afforded all who had not in fact abandoned their rights, but had merely delayed in perfecting them. The only rights sought to be extinguished were those where the inference could reasonably be drawn from inaction that the rights had been abandoned. The extinguishment resulted, not from the legislation itself, but from the conduct of the bondholder in continuing to fail to assert his right after due notice. The legislation in question does no more than recognize the logical inference to be drawn from long inaction on the part of the bondholder—that the claim has been paid, abandoned or otherwise extinguished.

As suggested by amici curiae for appellant, this legislation, which provides for the extinguishment of rights by the failure to invoke appropriate remedies within a reasonable time, may

be fully justified under the principles which have long been applied to recording statutes. In substance, the requirements of the sections under consideration are that the bondholder shall place his claim of record either in the superior court by foreclosure action or by applying for a sale of the property in the office of the proper city or county official. It is well established that the manner and operation of recording laws must be left, in part at least, to the discretion of the Legislature to be exercised soundly, in view of the nature of the titles and interests involved and the problem or emergency which led to the enactment. (45 Am.Jur. 436; *Turner* v. *New York*, 168 U.S. 90 [18 S.Ct. 38, 42 L.Ed. 392]; *Vance* v. *Vance*, 108 U.S. 514 [2 S.Ct. 854, 27 L.Ed. 808]; *Stafford* v. *Lick*, 7 Cal. 479.) While the principles involved are similar to those justifying statutes of limitation, the courts in applying the principles of recording laws have done more than deny the availability of a remedy while leaving existent the right. To leave the right existent would in many instances cloud the titles to land and frustrate the purpose of supplying certainty, finality and security of titles. Therefore recording laws may provide, and the courts have held, that persons who have been afforded a reasonable opportunity to protect their rights and have failed to exercise the same may be barred from asserting such rights. (See *Stafford* v. *Lick*, 7 Cal. 479, where failure to comply resulted in making instruments of title "void"; *Noble* v. *Hook*, 24 Cal. 638, upholding a statute which provided that a homestead would "cease" to exist; and *Tuttle* v. *Block*, 104 Cal. 443 [38 P. 109], where a statute requiring that a deed for delinquent taxes be made within a specified time or the purchaser be deemed to have relinquished his rights, was constitutional as to tax purchasers who acquired rights prior to enactment of the statute.)

There is urgent need for certainty, finality and security of titles. There is no more interference with vested rights in the situation here involved than in the cases immediately above cited, and the language used in *Vance* v. *Vance, supra,* is particularly appropriate: "The right of the State to prescribe the time within which existing rights shall be prosecuted, *and the means by and the conditions on which they can continue in force,* is, we think, undoubted. . . . Now, it is elementary that the State may establish, alter, lengthen or shorten the period of *prescription* of existing rights, provided a reasonable time be given in future for complying with the statute." (Emphasis added.)

The situation which gave rise to the legislation in question is a matter of common knowledge. During the 1920's special assessment districts were formed under many statutes and in great numbers for various types of public improvements. These statutes may be grouped roughly into two classes: First, those providing for ad valorem levies against all the properties in a district to retire bonds which were not liens on specific lots but general obligations of the district; and second, those providing for a specific lien against each individual lot to retire a specific bond. With the depression, widespread delinquencies occurred, and many statutes were passed to relieve the situation in the districts where the bonds constituted general obligations. The constitutionality of these statutes was upheld. (See, for example, *County of San Bernardino* v. *Way, supra,* 18 Cal.2d 647, 662, 663, 664, upholding a refunding program. See, also, *County of Los Angeles* v. *Jones,* 6 Cal.2d 695 [59 P.2d 489]; *County of San Diego* v. *Hammond,* 6 Cal.2d 709 [59 P.2d 478, 105 A.L.R. 1155]; *Los Angeles* v. *Aldrich,* 8 Cal.2d 541 [66 P.2d 647]; *County of Los Angeles* v. *Jones,* 13 Cal.2d 554 [90 P.2d 802].)

In those districts where the bonds or assessments constituted specific liens against specific lots a different situation was presented. Great numbers of properties went delinquent both as to assessments and general taxes, which delinquencies in many cases exceeded the value of the property. Bondholders became discouraged and abandoned their bonds, died, or left the state, and no record of present ownerships or addresses exists. Under the statutes as they existed prior to 1945, the liens of these bonds continued as perpetual clouds. They could not be eliminated by tax sales because of the "parity" rule established by statute. (*La Mesa Lemon Grove, etc., Dist.* v. *Hornbeck,* 216 Cal. 730 [17 P.2d 143]; *Neary* v. *Peterson,* 1 Cal.2d 703 [37 P.2d 82].) Thousands of properties remained stagnant and undeveloped, a blight on their communities and a burden to the taxpayers generally who suffered increased rates because of this loss of tax base.

The solution to this problem, as attempted by the 1945 Legislature, is a reasonable one. As heretofore pointed out, under the authorities cited and many others which could have been cited, the Legislature may require that the holder of a right take action to enforce it within a specified time, and such requirement does no violence to the due process or contract clauses of the state or federal Constitutions, so long as a reasonable time is allowed.

Legislation similar to that here under consideration was enacted in Oklahoma in 1939 to remedy a condition not unlike that prevailing in California. The act was held unconstitutional by a Federal Circuit Court of Appeals (*Hann* v. *City of Clinton*, 131 F.2d 978) and by a federal district court in *City of Clinton* v. *First National Bank of Clinton*, 39 F.Supp. 909. The Supreme Court of Oklahoma, however, in *Baccus* v. *Banks*, 199 Okla. 647 [192 P.2d 683], upheld the validity of the act. In that case a bondholder intervened. An appeal by the intervener to the United States Supreme Court was dismissed "for want of a substantial federal question." ([333 U.S. 858, 68 S.Ct. 743, 92 L.Ed. 1138].)

■ Respondent contends that the time allowed is unreasonable. It is urged that although the time appears to be 15½ months, the minimum time required to complete a sale through a city or county treasurer under the improvement act is seven months, so that the actual time allowed for commencement from the effective date of the statute is about eight months. It cannot be held, however, in the circumstances, that the time allowed is not reasonable. What constitutes a reasonable time is primarily a question for the Legislature, and a court will not overrule its decision except where palpable error or injustice has been committed. (*Rand* v. *Bossen, supra*, p. 66.) In the cited case it was held: ". . . [W]e cannot say the period of six months here specified is unreasonable. Consideration must be given to the circumstances that the collection of the assessments as required by the statute is a part of the bondholder's contract of which he is presumed to be aware. He also should know that the establishment of statutes of limitation are always a legislative prerogative." (See, also, *Tuttle* v. *Block*, 104 Cal. 443 [38 P. 109]; *Rosefield Packing Co.* v. *Superior Court*, 4 Cal.2d 120 [47 P.2d 716]; *Terry* v. *Anderson, supra*.)

It is further stated by respondent that in a number of cases within the knowledge of the writer of the brief various city and county treasurers refused to accept bonds for foreclosure, although presented in ample time to complete foreclosure before January 1, 1947. Respondent further asserts that in the nature of things, enactment of statutes such as those here involved causes a tremendous flood of foreclosures so as to result in considerable delay in the treasurer's office. It is a sufficient answer to this contention to say that such a factual situation is not now before this court, and whether such a

situation in a given case might result in an unconstitutional impairment of a bondholder's right cannot now be decided.

It is further argued that the plaintiff who seeks to quiet title should be required to do equity by paying the amount due the bondholder. We are not unmindful of the ruling in *Raisch* v. *Myers,* 27 Cal.2d 773 [167 P.2d 198], where it was held that the lien of an assessment continued to exist although the right to foreclosure was barred and that if the respondent there had been seeking affirmative relief through a quiet title action, she could not prevail unless she were willing to satisfy the appellant's existing lien. In the present cause, however, under section 2911 of the Civil Code as amended in 1945, the lien is "presumed to have been extinguished," and so far as the plaintiff in the present cause is concerned, the trial court having found him to be a "bona fide purchaser for value," the presumption is "conclusive." The situation parallels that where a purchaser of property seeks to quiet title against a mortgage which was barred at the time of the purchase. See *Faxon* v. *All Persons,* 166 Cal. 707 [137 P. 919, L.R.A. 1916B 1209], where it was said (p. 721) : "There seems to be no good reason for refusing to quiet the title of an owner in the situation of the plaintiff here. To apply the rule contended for by appellant to such a case would be equivalent to holding that the owner of the property could never have his title quieted against an unpaid mortgage not satisfied of record, however long the lapse of time since the maturity of the debt, and however numerous the transfers since the expiration of the right to foreclose. To so hold would result in perpetuating clouds upon titles, where no substantial equity demands that the merchantability of real property be thus hampered."

So here, the whole purpose of the legislation would be defeated by the rule contended for by respondent. Whatever may be the situation as between the holder of an outlawed bond and the original owner of the property who seeks to avoid payment, a bona fide purchaser is entitled to a decree quieting his title. A bona fide purchaser is one who takes in good faith and for value and in reliance upon the presumptions afforded by section 2911 of the Civil Code. The requirements of the section are similar in purpose to those of section 2957 of the Civil Code, requiring that a chattel mortgage be rerecorded within four years from its last recording or rerecording, or it is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers in good

faith and for value. Section 2957 was upheld as to preexisting mortgages in *Security-First National Bank* v. *Sartori,* 34 Cal.App.2d 408 [93 P.2d 863], where the court, quoting from a Utah case, said:

". . . Failure to refile would give notice to the world that the mortgage is no longer a valid and subsisting lien on the property described therein. . . . Credit may then be extended to the owner on the theory that the property is freed from the mortgage lien. . . ."

We further hold that the statute of limitations was not tolled during the period that title was in the State of California under a tax deed. The case chiefly relied upon by respondent is *Miller* v. *Watkins,* 194 Ark. 863 [110 S.W.2d 531, 111 S.W.2d 466, 113 A.L.R. 913].) In Arkansas, however, the state's lien for taxes is the paramount lien. In holding that the right to foreclose an improvement lien was suspended while the state had title, actual or apparent, the court said: "The right is suspended in either case, as the State cannot be divested of its paramount lien for its taxes, whether the sale was good or bad." In California, however, the tax title of the state is a "parity" title (*La Mesa Lemon Grove, etc., Dist.,* v. *Hornbeck,* 216 Cal. 730 [17 P.2d 143]; *Neary* v. *Peterson,* 1 Cal.2d 703 [37 P.2d 82]; *Monheit* v. *Cigna,* 28 Cal.2d 19, 26, 27 [168 P.2d 965, 167 A.L.R. 995]; Rev. & Tax. Code, § 3900.) In *Monheit* v. *Cigna, supra,* at page 27, the court held, in giving effect to the parity rule, that the respective purchasers, that is, the purchaser through a tax sale and the purchaser under an improvement lien foreclosure, become tenants in common, and each has an equitable lien against the property to the extent of the amount paid by him, with the result that in the event of the subsequent sale of the entire property, "each cotenant would be entitled to reimbursement for the amount paid by him before equal division of any excess."

Under the parity rule as applied in the decisions above cited the claims of the state and the bondholder are equal in rank and neither can by foreclosure or sale cut off the rights of the other. The acquisition of title by the state does not affect the improvement lien, nor does a foreclosure of the bond affect the title of the state. If the state could be made a party to a bond foreclosure proceeding, its tax title or lien would not be affected. The ultimate relationship between the parties is not established in the process of perfecting their respective rights, but is established by statute as construed in the line of cases culminating in *Monheit* v.

*Cigna, supra.* Since that relationship could not be changed by a court decision, it follows that the state would not be a necessary party to a foreclosure action, and it may be doubted whether it would be even a proper party. The state becomes an interested party only after the respective rights are perfected and some division or partition of the property is attempted.

It must therefore be held (1) that section 330 of the Code of Civil Procedure and section 2911 of the Civil Code, as enacted and amended respectively in 1945, are constitutionally applicable to assessment bonds and liens in existence prior to the effective date of the legislation, and (2) that the limitations contained in said sections or in any other applicable sections are not tolled during the time title is in the state under a tax deed.

The court having found that appellant purchased the property in good faith and for value, it follows that he is entitled to a judgment quieting his title against respondent, and that respondent should take nothing by his cross-complaint.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff and cross-defendant in conformity with the views herein expressed.

York, P. J., and Doran, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 24, 1949.